Marc J. Randazza, Esq.
Arizona Bar No. 027861
MJR@randazza.com
Randazza Legal Group
2 South Biscayne Blvd., Suite 2600
Miami, Florida 33131
Tel. (888) 667-1113
Fax (305) 437-7662

*Attorney for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| AIRFX.com and Marc Lurie, | ) | Case No.: _____ |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| vs. | ) | COMPLAINT |
| | ) | |
| AirFX, LLC, an Indiana LLC | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

Plaintiffs AIRFX.com and Marc Lurie ("Plaintiffs"), by and through their undersigned attorney, alleges against AirFX, LLC ("Defendant"), as follows:

**NATURE OF THE CASE**

This is an action for reverse domain name hijacking under 15 U.S.C. § 1114(D)(v), seeking injunctive and declaratory relief.

**INTRODUCTORY STATEMENT**

Plaintiff Marc Lurie is an entrepreneur, who has built and operated businesses in multiple states over the past several years.  His businesses have generated millions of dollars for local

economies and created hundreds of new jobs.  Since 2004, Lurie has focused his efforts on building and/or operating indoor skydiving facilities in various localities.  In developing his latest venture, striving to launch a new, even better line of indoor skydiving facility, Lurie registered an internet domain name incorporating his chosen moniker for his brainchild, AIRFX.

Now, a business entity from another state, selling a completely unrelated product (i.e., motorcycle parts), has decided that it covets the <airfx.com> domain name.  Undeterred by the fact that it has no legitimate claim to the domain name, Defendant has attempted to invent one – falsely asserting to a domain name dispute arbitration panel that Lurie has acted with some nefarious purpose.  Unfortunately, under the relaxed evidentiary standards for those proceedings, Defendant succeeded in falsely painting Lurie as a serial cybersquatter, and in falsely asserting superior rights to the domain name, without a shred of any kind of proof to support its claims.

If left to stand, Defendant's actions, which constitute reverse domain name hijacking, threaten to rob Lurie of tens of thousands of dollars spent in market research and branding efforts.  Fortunately, Congress has foreseen the potential for this type of injustice and provided a statutory mechanism whereby this Court can stay the hijacking of <airfx.com>.  Lurie hereby invokes that mechanism and brings this complaint seeking to retain ownership of his rightfully obtained online property.

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this action because:  (i) it involves a federal question; (ii) it involves a federally registered trademark; and (iii) it requires a declaration of rights and other legal relations.  *See* 28 U.S.C. §§ 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of

the United States."); 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . trademarks."); and 2201(a) ("In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.").

2. Venue is proper in this Judicial District because the property that is the subject of the action, the <airfx.com> domain name, is located here. *See* 28 U.S.C. § 1391(b) ("A civil action wherein jurisdiction is not founded solely on diversity of citizenship may . . . be brought only in . . . (2) a judicial district in which . . . a substantial part of property that is the subject of the action is situated . . . ."). In addition, the relevant sponsoring registrar, GoDaddy.com, Inc. ("GoDaddy"), is located within this Judicial District.

3. Pursuant to the Uniform Domain Name Dispute Resolution Policy ("UDRP") Paragraph 3(b)(xiii), the Complainant (in this case, now Defendant) is required to explicitly consent to a "mutual jurisdiction," in which challenges to a decision under the UDRP may be brought by the Respondent (in this case, now Plaintiff Lurie). Defendant expressly consented to jurisdiction in this District for actions such as this one. (Doc. No. 1-2, § 11.)

### THE PARTIES

4. Plaintiff AIRFX.com is an unincorporated business entity doing business as AIRFX since 2006. It is engaged in the research, development, and marketing of indoor skydiving equipment, namely wind tunnels for indoor skydiving.

5. Plaintiff Marc Lurie ("Lurie") is an individual domiciled in the State of California, and the owner of the AIRFX unregistered trademark for indoor skydiving equipment.

6. Defendant is an Indiana LLC, organized in 2008 (two years after the Plaintiff's AIRFX rights were established), which sells motorcycle parts.

## ALLEGATIONS COMMON TO ALL CLAIMS

7. Plaintiff Lurie is an indoor skydiving enthusiast and an inventor / entrepreneur. (Doc. No. 1-1, ¶ 2.) For many years, Lurie has been personally and professionally interested in indoor skydiving and related activities. (Doc. No. 1-1, ¶ 4.) In particular, Plaintiff Lurie has invested in multiple wind tunnel facilities – which, by using forced air, simulate the upward draft of "free-fall" and permit a skydiver to practice aerial maneuvers, without the need of a plane to jump out of, or the necessity of a parachute. (Doc. No. 1-1, ¶ 3.)

8. Plaintiff Lurie's active participation in this field dates to 2004, when he first invested in a "SkyVenture" brand wind tunnel. Plaintiff Lurie subsequently invested in multiple SkyVenture-brand wind tunnels, including tunnels in Orlando, Florida, and at Universal Studios, California. Screen captures of publicly available company information, showing Lurie's involvement in such entities since as early as 2004, have been provided herewith as Composite Exhibit E. (Doc. No. 1-5.)

9. In early 2006, Lurie began a concerted marketing effort for his various wind tunnel holdings, wherein he intended to adopt a new brand for the wind tunnel operations that he owned in California and Florida. Lurie thereupon instructed Jillian Elliott, the then-Vice President of Marketing for his wind tunnel companies, to develop a brand that could be used in association with the wind tunnels. A true and correct copy of a signed letter from Ms. Elliot, who no longer works for Lurie, describing Plaintiffs' plan to develop a new brand name, has been submitted herewith as Exhibit D. (Doc. No. 1-4.)

10. The trade name developed through these efforts was "AIRFX." The name is suggestive of the forced air used to create the skydiving "effect" in one of the Plaintiffs' wind tunnels – hence the name AIRFX, an analog to "Air Effects."

11. Ultimately, instead of utilizing the "AIRFX" brand in connection with his existing SkyVenture holdings, Plaintiff Lurie decided to sell his SkyVenture facilities and investments and utilize the "AIRFX" brand with a new line of tunnels that, he believes, will offer better technical capabilities and revenue opportunities. A true and correct copy of a signed letter from Alan "Buzz" Fink, owner and operator of one of the largest skydiving facilities in the United States, confirming Lurie's plans, has been submitted herewith as Exhibit H. (Doc. No. 1-8.)

12. Buzz Fink is a potential purchaser of Lurie's new wind tunnels, which will be sold under the AIRFX brand name.

*Plaintiff's Registration and Use of the Hijacked Domain Name*

13. In exploring potential brand names, Ms. Elliot tested a handful of names utilizing the word "air" and suggesting the sport of skydiving combined with images of technological innovation – one of which was the name "AIRFX." (*See* Doc. No. 1-4.)

14. While evaluating branding strategies, Ms. Elliot advised Lurie to procure domain name registrations corresponding to the early frontrunners, "AIRXTREME," "AIR-XTREME," "AIROBOD," "AEROBOD." A letter dated July 12, 2006, signed by Lurie, and confirming purchase of the domain name registrations for "AIRXTREME.COM" and "AIR-XTREME.COM" from a third party has been submitted herewith as Exhibit F. (Doc. No. 1-6.)

15. After completion of market testing for the potential wind tunnel names, Lurie determined a later developed candidate, "AIRFX," to have the most marketing appeal, and

1  accordingly he decided the that this brand, trademark, and domain name would provide the most
2  advantageous brand recognition, degree of suggestiveness, and most memorable web address for
3  his indoor skydiving wind tunnel business.

4      16.    Having decided upon the use of the AIRFX trademark for skydiving equipment,
5  Lurie sought to register <airfx.com>, but was disappointed to find that a domain name speculator
6  had already registered the domain.

7      17.    Undeterred in his quest to brand his company and equipment with the AIRFX
8  mark, in January 2007, Lurie submitted a $2,100 bid to purchase the domain name AIRFX.com
9  from its then-current owner. (Doc. No. 1-1, ¶ 12.) A true and correct copy of the purchase offer
10 confirmation for <airfx.com> has been submitted herewith as Exhibit G. (Doc. No. 1-7.)

11     18.    While Plaintiffs found the $2,100 purchase price to be daunting, given the
12 expensive preparations and expensive marketing that Plaintiffs had engaged in and planned to
13 engage in, it was seen as a reasonable cost. (Doc. No. 1-1, ¶ 13.)

14     19.    Lurie's bid to purchase the <airfx.com> domain name was successful, and it was
15 transferred into his control on February 2, 2007.

16     20.    Since that date, Lurie has continuously maintained his ownership of the
17 <airfx.com> domain name, which is currently held through its sponsoring registrar, GoDaddy.
18 (*See* Doc. No. 1-10.)

19     21.    Since 2007, Plaintiffs have maintained their desire to utilize the name "AIRFX"
20 in association with his wind tunnel business venture, and presently continue to work toward this
21 goal. (Doc. No. 1-1, ¶ 15-16.)

22

22. Plaintiffs have actively used the "AIRFX" name while seeking potential purchasers of their newly designed wind tunnel, which will bear that brand, and Lurie has provided marketing materials to both potential purchasers and potential investors.

23. In preparation for establishing his own wind tunnel business under the name "AIRFX," Lurie has gone about divesting himself of his ownership interests in other wind tunnel companies, such as his SkyVenture holdings.

24. Mr. Lurie has also identified and consulted with the leading aerodynamicist in the field and identified a manufacturing partner. Further, Mr. Lurie has begun preliminary evangelical sales efforts. The leading candidate to be the first customer is Buzz Fink, the owner/operator of one of the largest skydiving facilities in the United States. The total project cost will eventually reach millions of dollars and involve several years of effort – none of which can be rushed or completed on an artificial timeline. (Doc. No. 1-1, ¶ 18-19.)

25. Importantly, Plaintiffs' business is not an online retailer or service provider. Plaintiff has also not announced its business publically, and intends to do so when, and in conjunction with, the launch of its first completed facility. Announcing a new business in connection with a tangible success in the marketplace is a common "launch strategy" in public relations. As such, the business had and has no need of a website until this preliminary work is complete. (Doc. No. 1-1, ¶ 20.) In fact, a prematurely launched website could prove detrimental to the Plaintiff's marketing strategy.

26. In the meantime, Plaintiffs have maintained ownership of <airfx.com>, which incorporates the chosen "AIRFX" name, in anticipation of publicly launching their own brand of

wind tunnels and a corresponding website to market them. The Plaintiffs have also engaged in extensive analogous use[1] of the mark, AIRFX, during this time.

### *The UDRP Action Against the Hijacked Domain Name*

27. Defendant is owner of a trademark registration for "AIRFX" for use in association with "motorcycles, vehicle parts, namely, shock absorbers, and suspension systems for motorcycles, bicycles, automobiles, and powered vehicles." *See* U.S. Trademark Reg. No. 3,214,511.

28. Despite the fact that the Plaintiffs do not compete with Defendant, and in spite of the fact that Plaintiffs have never utilized the "AIRFX" name in a way that might infringe upon Defendant's registered rights, nearly one year after Lurie acquired the <airfx.com> domain name an individual who identified himself as an employee of Defendant called Lurie, threatening to sue if he did not sell the domain name to Defendant.

29. Lurie politely explained to Defendant that <airfx.com> was not for sale.

30. After that initial refusal, Defendant did not call again, and Plaintiffs assumed that the matter was resolved.

31. Then, approximately two years later, Plaintiffs received a letter dated February 11, 2010, from another representative of Defendant, Christopher Haigh, Esq., of the firm IPExtract, asserting that Plaintiffs must turn over control of <airfx.com>. A true and correct copy of that letter has been submitted herewith as Exhibit I. (Doc. No. 1-9.)

---

[1] "Analogous use" is a term of art in the realm of trademarks which means use of a mark that are insufficient to support a registration, yet sufficient to create public identification of a term with its putative owner for an intended future commercial use. *See, e.g., Aktieselskabet AF 21 November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 20-21 (D.C. Cir. 2008). Market research concerning the usability of an intended mark can be used to show analogous use. *Id.*

32. Upon receipt of Defendant's letter, Lurie contacted Mr. Haigh by phone to again inform him that no infringing use has ever been planned for <airfx.com>. (Doc. No. 1-1, ¶ 34.)

33. Lurie again informed Mr. Haigh that a considerable amount of money had been invested in developing the "AIRFX" brand name and procuring the corresponding domain name registration, that Plaintiffs have not changed their plan to launch a commercial website on <airfx.com>, and that the domain name was not for sale. (Doc. No. 1-1, ¶ 35.) At the conclusion of their telephone conversation, Lurie once again believed that the matter was resolved.

34. However, on April 26, 2011, more than a year later, and more than four years since the domain was first purchased by Lurie, Plaintiffs received notice that Defendant had submitted a domain dispute complaint against Plaintiffs, asserting that Lurie had registered and used <airfx.com> in bad faith. Defendant further alleged as fact that Lurie was in the business of buying and selling domain names professionally. Defendant provided no evidence to support their untruthful statements attacking Lurie's credibility, nor could the Defendant non-perjuriously do so. A true and correct copy of the amended UDRP complaint has been provided herewith as Exhibit B. (Doc. No. 1-2.)

35. Plaintiffs prepared and filed a response to Defendant's amended complaint on May 3, 2011, refuting its allegations of bad faith and accurately setting forth the facts surrounding Lurie's registration and use of <airfx.com>, which use has never interfered with Defendant's rights. A true and correct copy of Plaintiffs' response to Defendant's amended complaint, along with its supporting documents, are submitted herewith as Exhibits C, D, E, F, H, and I. (Doc. Nos. 1-3, 1-4, 1-5, 1-6, 1-7, 1-8, and 1-9.)

36. Despite Defendant's failure to show that Plaintiffs had engaged in bad faith registration or use of <airfx.com>, a single-member panel erroneously decided in favor of the UDRP Complainant (i.e., Defendant) on May 16, 2011, and ordered that <airfx.com> be transferred away from Plaintiffs.

37. The <airfx.com> domain name is now pending transfer to Defendant, as the result of this erroneous domain dispute decision from the National Arbitration Forum.

38. The Court is not bound by this decision whatsoever.

39. According to its domain name dispute procedure, GoDaddy has delayed transferring <airfx.com> to the Defendant until after ten business days have passed from the arbitration decision, providing Plaintiffs an opportunity to file this action and contest the panel's finding.

40. Although the <airfx.com> domain name has not yet been transferred away from Plaintiffs, the instant action is ripe for review by this Court, because such transfer is inevitable absent further action by Plaintiff.[2]

41. Plaintiff asserts that <airfx.com> should not be transferred to the Defendant.

**FIRST CLAIM FOR RELIEF**
(*Reverse Domain Name Hijacking – 15 U.S.C. § 1114(2)(D)(v)*)

42. Plaintiff hereby re-alleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

43. Through passage of the Anticybersquatting Consumer Protection Act (the "ACPA"), Congress amended 15 U.S.C. § 1114 to establish a right of relief against an

---

[2] *See, e.g., Sallen*, 273 F.3d at 25, n.11 (noting that a complaint under 15 U.S.C. 1114(2)(D)(v) is properly brought where transfer of the disputed domain name is inevitable following an arbitration decision).

overreaching trademark owner seeking to take ownership of domain names that have not been registered or used in violation of the trademark owner's rights. This practice is colloquially called "reverse domain name hijacking."

44. The Internet Corporation for Assigned Names and Numbers ("ICANN"), the organization responsible for promulgating the UDRP, defines reverse domain name hijacking as "using the Policy in bad faith to attempt to deprive a registered domain-name holder of a domain name."[3]

45. Section 1114 states, in pertinent part, that:

> [a] domain name registrant whose domain name has been suspended, disabled, or transferred under [the UDRP] may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter. The court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant.

15 U.S.C. § 1114(2)(D)(v).

46. To prevail on a reverse hijacking claim, Plaintiffs must show that: (i) Lurie is the domain name registrant for the <airfx.com> domain name (the "Hijacked Domain Name"); (ii) the Hijacked Domain Name was suspended, disabled, or transferred under GoDaddy's domain dispute resolution policy; (iii) the UDRP Complainant has notice of this action by service or otherwise; and (iv) Plaintiffs' registration or use of the Hijacked Domain Name is not unlawful under the ACPA.

47. Plaintiffs can demonstrate each of the four requirements to prevail in this reverse hijacking claim.

---

[3] UDRP Rule 1, at http://www.icann.org/en/dndr/udrp/uniform-rules.htm (last visited May 24, 2011).

*Plaintiff is the domain name registrant.*

48. Plaintiff Lurie is the current owner of the Hijacked Domain Name.

49. Plaintiff Lurie has been the registrant of the Hijacked Domain Name continuously since February 2, 2007. (Doc. 1-1, ¶ 14.) His email address and the contact information for Ms. Elliot are listed in the current WHOIS record for the domain name. (*See* Doc. No. 1-10.)

*The Hijacked Domain Name was suspended, disabled, or transferred under GoDaddy's domain dispute resolution policy.*

50. On April 26, 2011, the UDRP Complainant (i.e., Defendant) submitted a domain name dispute complaint to a qualified arbitrator, in accordance with GoDaddy's domain name dispute resolution policy.

51. Despite the fact that the UDRP Complainant / Defendant failed to show that Plaintiffs had registered or used the Hijacked Domain Name in bad faith, a single-member panel decided that <airfx.com> should be transferred away from Plaintiffs.

52. The Hijacked Domain Name is subject to imminent transfer as a result of the improper UDRP decision.

*The UDRP Complainant has notice of this action by service or otherwise.*

53. Contemporaneous with the filing of this Complaint and its Exhibits with the Court, Plaintiff's attorney has provided notice of the same by email upon the UDRP Complainant, its attorney, and the sponsoring registrar for the Hijacked Domain Name, GoDaddy.

54. This Complaint, its exhibits, and a properly issued Summons, shall be served upon Defendant in due course.

*<u>Neither Plaintiff's registration, nor his use of the
Hijacked Domain Name is unlawful under the ACPA.</u>*

55. Plaintiffs have neither registered nor used the Hijacked Domain Name in bad faith.

56. Congress has provided a number of guidelines for determining whether a party has registered, used, or trafficked in a domain name with bad faith. *See* 15 U.S.C. § 1125(d)(1)(B)(i). More specifically, "[i]n determining whether [Plaintiffs have] a bad-faith intent [sufficient to justify forfeiture of the domain name in question], a court may consider factors such as, but not limited to:

    I.    the trademark or other intellectual property rights of [Plaintiffs], if any, in the [Hijacked Domain Name];

    II.    the extent to which the [Hijacked Domain Name] consists of the legal name of [Plaintiffs] or a name that is otherwise commonly used to identify [Plaintiffs];

    III.    [Plaintiffs'] prior use, if any, of the [Hijacked Domain Name] in connection with the bona fide offering of any goods or services;

    IV.    [Plaintiffs'] bona fide noncommercial or fair use of ["AIRFX"] in a site accessible under the [Hijacked Domain Name];

    V.    [Plaintiffs'] intent to divert consumers from the [UDRP Complainant]'s online location to a site accessible under the [Hijacked Domain Name] that could harm the goodwill represented by ["AIRFX"], either for commercial gain or

with the intent to tarnish or disparage ["AIRFX"], by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

VI.  [Plaintiffs'] offer to transfer, sell, or otherwise assign the [Hijacked Domain Name] to the [UDRP Complainant] or any third party for financial gain without having used, or having an intent to use, the [Hijacked Domain Name] in the bona fide offering of any goods or services, or [Plaintiffs'] prior conduct indicating a pattern of such conduct;

VII.  [Plaintiffs'] provision of material and misleading false contact information when applying for the registration of the [Hijacked Domain Name], [Plaintiffs'] intentional failure to maintain accurate contact information, or [Plaintiffs'] prior conduct indicating a pattern of such conduct;

VIII.  [Plaintiffs'] registration or acquisition of multiple domain names which [Plaintiffs know] are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

IX.  the extent to which [the UDRP Complainant's mark] incorporated in [Plaintiffs'] domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of [this section]."

15 U.S.C. § 1125(d)(1)(B)(i).

57.  Addressing these factors, (I.) Plaintiffs have made extensive use of the "AIRFX" mark, which use is analogous to use in commerce; (II.) the Hijacked Domain Name consists of

the brand name chosen by Plaintiffs for their wind tunnel business; (III.) Plaintiffs' use of the <airfx.com> domain name has been passive, but only in preparation for Lurie's intended, future bona fide use; (IV.) no use has ever been made of Defendant's mark, since Plaintiffs are engaged in a wholly unrelated class of goods and services; (V.) the disputed domain is parked, and Defendant, in its original UDRP complaint, admitted that Plaintiffs do not seek to divert customers of Defendant; (VI.) Plaintiffs have never offered to sell or otherwise assign the <airfx.com> domain name; Plaintiffs have clearly demonstrated their intent to use the <airfx.com> domain name in connection with a bona fide offering of goods and services; (VII.) Plaintiffs can be reached through use of the contact information provided in the WHOIS record for the <airfx.com> domain name; Plaintiffs have never had any intent to hide Lurie's ownership of the <airfx.com> domain name; (VIII.) Plaintiffs have never registered any domains which they know to be violative of any parties' trademark rights; and (IX.) Defendant's mark is not famous, and is only demonstrably distinctive in relation to its current use – i.e., in relation to motorcycles, vehicle parts, namely, shock absorbers, and suspension systems for motorcycles, bicycles, automobiles, and powered vehicles; Defendant's mark most certainly lacked any distinctiveness or notoriety of any kind when the Plaintiffs registered <airfx.com>.

58. In short, Plaintiffs neither registered, trafficked in, nor used the Hijacked Domain Name in any way that violates the ACPA. Although both parties have rights in the underlying mark, Defendant seeks to use its subsequent federal trademark registration to hijack the prior purchase of <airfx.com> by Plaintiffs – who have superior rights to those held by Defendant.

59. Plaintiffs' registration and use of <airfx.com> are not unlawful under the ACPA, and therefore the Plaintiffs have every right to possess and maintain this valuable business asset.

*Plaintiff is the victim of a reverse domain name hijacking*

60.     On May 16, 2011, a single-member arbitration panel erroneously decided that Plaintiffs' registration and use of the <airfx.com> domain name were in bad faith, and ordered transfer of <airfx.com> to the UDRP Complainant / Defendant.

61.     This arbitration decision is due no deference in this Court.[4]  Moreover, in deciding Plaintiff's claims, this Court should perform a *de novo* review of the allegations herein presented.[5]

62.     Despite its knowledge to the contrary, Defendant presented in its UDRP complaint the unsupported assertion that Plaintiffs have no legitimate interest in the <airfx.com> domain name.  On the contrary, Plaintiffs' verifiable activities to date not only demonstrate their legitimate interest in the Hijacked Domain Name, but they prove by clear and convincing evidence that Plaintiffs have no intention of using the Hijacked Domain Name for an improper purpose.

63.     Despite its knowledge to the contrary, Defendant presented in its UDRP complaint the unsupported assertion that Plaintiffs registered the domain name <airfx.com> with the intent to ransom it for financial gain.

64.     Despite its knowledge to the contrary, Defendant presented in its UDRP complaint the unsupported allegation that Plaintiff Lurie is "in the business of securing domain

---

[4] *See Weber-Stephen Products Co. v. Armitage Hardware and Building Supply, Inc.*, 2000 U.S. Dist. LEXIS 6335 at *7, 54 U.S.P.Q.2d 1766 (N.D. Ill. 2000) ("We conclude that this Court is not bound by the outcome of the ICANN administrative proceedings."); *see also Parisi v. Netlearning, Inc.*, 139 F. Supp. 2d 745, 752 (E.D. Va. 2001); *Broadbridge Media LLC v. Hypercd.com*, 106 F. Supp. 2d 505, 509 (S.D.N.Y. 2000).

[5] *See Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 31-32 (1st Cir. 2001); *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 381 (2d Cir. 2003); *Dluhos v. Strasberg*, 321 F.3d 365, 373 (3d Cir. 2003); *Hawes v. Network Solutions, Inc.*, 337 F.3d 377, 386 (4th Cir. 2003); *Barcelona.com, Inc. v. Excelentisimo Ayuntamiento de Barcelona*, 330 F.3d 617, 626 (4th Cir. 2003); *Parsi v. NetLearning, Inc.*, 139 F. Supp. 2d 745, 752 (E.D. Va. 2001); *Stenzel v. Pifer*, 2006 U.S. Dist. LEXIS 32397 (W.D. Wash. 2006).

names for marks, including issuing trademarks, that he knows are valuable to other corporations, with the sole purpose of seeking to derive income from the rental of those domains." (Doc. No. 1-2, § 7(c)(iii).)

65. These assertions are patently false.

66. Defendant knew that these assertions were patently false when Defendant submitted them to the UDRP panel. However, Defendant desired to possess <airfx.com> for its own purposes, and its desire to possess the domain name despite the Plaintiffs' legitimate right to own it, motivated Defendant to knowingly and willfully submit false statements to the UDRP panel.

67. The panel relied upon these statements in issuing its erroneous decision.

68. The UDRP Complainant / Defendant improperly and unethically introduced evidence of an offer to compromise the disputed claim in its UDRP complaint. Under Federal Rule of Evidence 408, the trier of fact in this action should not consider the terms of this offer to compromise; however, since they are part and parcel of the UDRP complaint, this Court must be informed of the terms of this offer of compromise.

69. After receiving Defendant's initial threatening calls in or around early 2008, Lurie discussed with Defendant the possibility of licensing or leasing the <airfx.com> domain name to Defendant, but only until such time as Plaintiffs were prepared to launch their own website, at which point Plaintiffs intended to use <airfx.com> to market their own, noncompeting products and services. No license or lease agreement was reached between Plaintiffs and Defendant.

70. Defendant improperly and unethically provided this offer of compromise to the panel, twisting Plaintiff Lurie's willingness to provide a reasonable accommodation and

presenting it as evidence of "bad faith." Even if it were properly submitted to the UDRP panel, which it was not, the offer demonstrates Plaintiffs' good faith, if anything, in being willing to permit Defendant to use the domain name during Plaintiffs research, development, and capital raising period.

71. This Court is not bound by the decision of the single-member arbitration panel.

72. Plaintiff did not register <airfx.com> in bad faith.

73. Plaintiff has never used <airfx.com> in bad faith.

74. Plaintiff has never trafficked in <airfx.com>, nor in any other domain name.

75. The UDRP Complainant / Defendant has overreached its trademark rights and wrongfully asserted a claim to the Hijacked Domain Name.

76. The events described herein constitute reverse domain name hijacking and warrant injunctive relief for Plaintiffs under 15 U.S.C. § 1114(2)(D)(v).

77. Plaintiffs are entitled to injunctive relief, preventing the UDRP Complainant's reverse hijacking of the <airfx.com> domain name.

//
//
//
//
//
//
//
//

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for judgment as follows:

(1) That the Court enter a judgment in favor of Plaintiffs and affirming that: (i) Lurie is the domain name registrant for <airfx.com>; (ii) <airfx.com> was suspended, disabled, or transferred under GoDaddy's domain dispute resolution policy; (iii) Defendant has notice of this action by service or otherwise; and (iv) Plaintiffs' registration or use of <airfx.com> is not unlawful under the ACPA.

(2) That the Court issue injunctive relief against enforcement of the UDRP decision of May 16, 2011, which decision ordered transfer of the Hijacked Domain Name away from Plaintiffs.[6]

Dated this 26th Day of May, 2011.

**RANDAZZA LEGAL GROUP**

 s/ Marc Randazza
Marc J. Randazza, Esq.
Arizona Bar No. 027861
MJR@randazza.com
Randazza Legal Group
2 South Biscayne Blvd., Suite 2600
Miami, Florida 33131
Tel. (888) 667-1113
Fax (305) 437-7662

*Attorney for Plaintiffs*

---

[6] Plaintiffs have neither sought damages nor an attorneys' fees award in this complaint. However, Plaintiffs reserve the right to amend this complaint to seek such relief.