Marc J. Randazza (AZ Bar No. 027861)
MJR@randazza.com
Randazza Legal Group
2 South Biscayne Blvd., Suite 2600
Miami, Florida 33131
Tel. (888) 667-1113
Fax (305) 437-7662

*Attorney for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AIRFX.com and Marc Lurie,<br><br>Plaintiffs<br><br>vs.<br><br>AirFX, LLC, an Indiana LLC<br><br>Defendant | Case No.: 2:11-cv-01064-FJM<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND/OR TRANSFER VENUE |

Randazza Legal Group
2 South Biscayne Blvd., Suite 2600; Miami, Florida 33131

Randazza Legal Group
2 South Biscayne Blvd., Suite 2600; Miami, Florida 33131

## TABLE OF CONTENTS

TABLE OF AUTORITIES .......... ii

I. Introduction .......... 1

II. The ACPA, the UDRP, and RDNH .......... 2

a. The Anti-Cybersquatting Consumer Protection Act and Reverse Domain Name Hijacking .......... 2

b. Relevant Provisions of the UDRP .......... 3

c. An RDNH claim is not an "appeal," it is a de novo action. .......... 6

III. Procedural History .......... 7

IV. Argument .......... 7

a. Plaintiffs Have Properly Alleged a Claim for Reverse Domain Name Hijacking Under 15 U.S.C. § 1114(2)(D)(v), thus Dismissal Under FRCP 12(b)(6) is Improper. .......... 8

b. Defendant Not Only Consented to This Court's Jurisdiction, but actually Selected it Rendering its arguments for Transfer of Venue Improper. .......... 10

V. Conclusion .......... 14

**TABLE OF AUTORITIES**

**Cases**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) .......... 10

*Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona*, 330 F.3d 617 (4th Cir. 2003) .......... passim

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .......... 10

*Broadbridge Media LLC v. Hypercd.com,* 106 F. Supp. 2d 505 (S.D.N.Y. 2000) .......... 6

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) .......... 15

*Cauchi v. Brown,* 51 F. Supp. 2d 1014 (E.D. Cal. 1999) .......... 10

*Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273 (4th Cir. 2009) .......... 14

*Costar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660 (D. Md. 2009) .......... 15

*Dluhos v. Strasberg*, 321 F.3d 365 (3d Cir. 2003) .......... 8

*Gilligan v. Jamco Dev. Corp,* 108 F.3d 256 (9th Cir. 1997) .......... 9

*Hawes v. Network Solutions, Inc.*, 337 F.3d 377 (4th Cir. 2003) .......... 7

*In re Martin-Trigona*, 795 F.2d 9 (2d Cir. 1986) .......... 10

*M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972) .......... 14

*Mann v. AFN Invs., Ltd.*, 2007 U.S. Dist. LEXIS 54582 (S.D. Cal. July 27, 2007) .......... 11, 14

Randazza Legal Group
2 South Biscayne Blvd., Suite 2600; Miami, Florida 33131

*Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133 (9th Cir. 2004) ........ 14

*Nat'l Equip. Rental, Ltd. v. Szukhent,* 375 U.S. 311, 84 S. Ct. 411, 11 L. Ed. 2d 354 (1964) ........ 14

*Parisi v. Netlearning, Inc.,* 139 F. Supp. 2d 745 (E.D. Va. 2001) ........ 6

*Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273 (9th Cir. 1984) ........ 12, 14

*Ricks v. BMEzine.com, LLC*, 727 F. Supp. 2d. 936 (D. Nev. 2010) ........ 3, 11

*Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14 (1st Cir. 2001) ........ 4, 7, 8, 11

*Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370 (2d Cir. 2003) ........ 2, 7, 8

*Super-Krete Int'l, Inc. v. Sadleir*, 712 F. Supp. 2d 1023, 1034 (C.D. Cal. 2010) ........ 7

*Swenson v. T-Mobile USA, Inc.,* 415 F. Supp. 2d 1101 (S.D. Cal. 2006) ........ 12, 14

*United States v. Redwood City,* 640 F.2d 963 (9th Cir. 1981) ........ 10

*Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241 (2d Cir. 2004) ........ 10

*Weber-Stephen Products Co. v. Armitage Hardware and Building Supply, Inc.,* 2000 U.S. Dist. LEXIS 6335, 54 U.S.P.Q.2d 1766 (N.D. Ill. 2000) ........ 6

*Zimmerman v. Burge*, 2008 U.S. Dist. LEXIS 25154 (N.D.N.Y. Mar. 28, 2008) ........ 10

**Statutes**

15 U.S.C. § 1114 (2006) ........ passim

15 U.S.C. § 1125 (2006) ........ 1, 3, 6, 8

**Rules**

Fed. R. Civ. P. 12 ........ 2, 7

Randazza Legal Group
2 South Biscayne Blvd., Suite 2600; Miami, Florida 33131

Fed. R. Civ. P. 4 .......... 7

**Articles**

A. Michael Froomkin,
*Wrong Turn in Cyberspace: Using ICANN to Route Around the APA and the Constitution*, 50 Duke L.J. 17 (2000) .......... 4

Randazza Legal Group
2 South Biscayne Blvd., Suite 2600; Miami, Florida 33131

Randazza Legal Group
2 South Biscayne Blvd., Suite 2600; Miami, Florida 33131

**PLAINTIFFS' OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS AND/OR TRANSFER VENUE**

Plaintiffs AIRFX.com and Marc Lurie (collectively the "Plaintiffs," individually "Plaintiff"), by and through their undersigned attorney, file this Opposition to Defendant's Motion to Dismiss and/or Transfer (Doc. # 10) (the "Motion"). Defendant has not articulated a basis for dismissal of his claim, and transfer of this action to the Southern District of Indiana is improper – in addition to being specifically waived by Defendant in the Uniform Domain Name Dispute Resolution Policy ("UDRP") proceeding upon which this action is predicated. Accordingly, the Court should deny Defendant's Motion (Doc. # 10) on all bases.

## I. Introduction

Marc Lurie, an inventor and entrepreneur, brought this action to vindicate his rights in the <airfx.com> domain name (the "Domain Name"), and the AIRFX brand for indoor skydiving equipment. Defendant has attempted to use a domain name arbitration to wrest this valuable property away from Lurie, simply because the Defendant wants it without paying for it. This Action employs the Reverse Domain Name Hijacking (RDNH) portion of the Lanham Act, found at 15 U.S.C. § 1114(2)(D)(v), which gives the Plaintiff standing to seek a declaratory judgment from this Court that Lurie has not violated the Anticybersquatting Consumer Protection Act (ACPA), found at 15 U.S.C. § 1125(a). If this court finds that Lurie has not violated the ACPA, this will function as an adjudication of Lurie's right to continue to own the <airfx.com> domain name.

The Defendant's Motion to Dismiss (Doc. # 10) mischaracterizes the settled law and documented facts of the case. The Motion provides conclusory factual and legal positions, but fails to provide any support for them. The section devoted to seeking a dismissal under Fed. R.

Randazza Legal Group
2 South Biscayne Blvd., Suite 2600; Miami, Florida 33131

Civ. P. 12(b)(6) fails to cite a single piece of binding authority. Defendant mischaracterizes the action as an "appeal from judgment," which it is not. See *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 374 (2d Cir. 2003) (domain-name registrant's claim under 15 U.S.C. § 1114(2)(D)(v) does not involve review of a UDRP decision, it is a simple declaratory judgment that the Plaintiff has not violated the ACPA). The Defense claims that it is the "undisputed owner of the federal trademark AirFX," but fails to note that trademarks are not simply in-gross rights to a string of letters, but are only enforceable for the goods and services to which they are attached. Most bizarrely, the Defense complains that this action was brought in the District of Arizona, when it was the Defendant who chose this jurisdiction for the resolution of this dispute, not the Plaintiff.

Plaintiffs have properly brought this action before the court under 15 U.S.C. § 1114(2)(D)(v). Plaintiffs have also properly pled their claim for reverse domain name hijacking (Doc. # 1 ¶¶ 46-77). In addition to not being supported by law, Defendant is estopped from contesting venue and jurisdiction, as it specifically selected this jurisdiction for this dispute's resolution. The Motion must be denied.

**II. The ACPA, the UDRP, and RDNH**

*a. The Anti-Cybersquatting Consumer Protection Act and Reverse Domain Name Hijacking*

When Congress passed the ACPA, the purpose was primarily to prohibit cybersquatting, but the Act also provides protection to domain name registrants against "overreaching trademark owners" who "reverse hijack" a domain name from a registrant where the registrant's actions were lawful. *Ricks v. BMEzine.com, LLC*, 727 F. Supp. 2d. 936 (D. Nev. 2010) (citing *Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona*, 330 F.3d 617, 625 & n.1 (4th

Cir. 2003) (quotations omitted). The Reverse Domain Name Hijacking provision is found at 15 U.S.C. § 1114(2)(D)(v), and it provides as follows:

> A domain name registrant whose domain name has been suspended, disabled, or transferred under a policy described under clause (ii)(II) [e.g., the the UDRP] may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter. The court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant.

To prevail on a reverse hijacking claim, the domain name registrant must show "(1) that it is a domain name registrant; (2) that its domain name was suspended, disabled, or transferred under a policy implemented by a registrar as described in 15 U.S.C. § 1114(2)(D)(ii)(II); and (3) that the owner of the mark that prompted the domain name to be suspended, disabled, or transferred has notice of the action by service or otherwise." *Barcelona.com, Inc.*, 330 F.3d at 626. Additionally, the registrant must show that its registration or use of the domain name is not unlawful under the 15 U.S.C. § 1125(d). *Ricks*, 727 F. Supp. 2d at 959 ("The Court […] concludes that to satisfy the ACPA's requirement that a domain name registrant show that its conduct was not unlawful under 'this Act,' it must show its conduct was not unlawful under only the ACPA, not the entire Lanham Act."). See also *Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 18 (1st Cir. 2001) (describing a reverse hijacking claim as one "for a declaration of nonviolation of the ACPA" or 15 U.S.C. § 1125(a)).

*b. <u>Relevant Provisions of the UDRP</u>*

The Internet Corporation for Assigned Names and Numbers ("ICANN") has promulgated, and the vast majority of domain name registrars have adopted[1] the Uniform

[1] The concerned registrar in the instant case, GoDaddy.com, Inc., has adpoted the UDRP for all ".com" domain names registered through its service, and all affected registrants are required to accept the initial jurisdiction of an accredited arbitration panel for domian name disputes. *See* Section 5, GoDaddy.com Domain Registration

Randazza Legal Group
2 South Biscayne Blvd., Suite 2600; Miami, Florida 33131

Randazza Legal Group
2 South Biscayne Blvd., Suite 2600; Miami, Florida 33131

Domain-Name Dispute-Resolution Policy or "UDRP" as a potential mechanism for resolving multiple claims to the same domain name – which can only have one registrant at a time. The UDRP provides a set of rules[2] and policies[3] that are applied by a domain name panelist to determine if the domain name should be taken from the registrant and given to the complainant. The UDRP arbitration process is an *ex-parte* proceeding[4] designed to be a fast and inexpensive alternative to litigation. However, the UDRP has been criticized as providing inadequate due process protections. See A. Michael Froomkin, *Wrong Turn in Cyberspace: Using ICANN to Route Around the APA and the Constitution*, 50 Duke L.J. 17, 29 (2000). It is for this reason that the ACPA contains the Reverse Domain Name Hijacking provision 15 U.S.C. § 1114(2)(D)(v) – so that an American respondent in a UDRP proceeding, who finds his rights violated, can institute a *de novo* proceeding in federal court, where his due process rights will be protected.

Any party filing a UDRP complaint is required to recognize a right of a respondent to institute a new proceeding to overturn the UDRP decision. The UDRP mandates that the complainant in the proceeding (in this case, the Defendant in this action) must choose a "mutual jurisdiction" in which it will submit to a *de novo* action seeking to overturn the panelist's decision. The complainant has the privilege of selecting this "mutual jurisdiction," under the UDRP.[5] The complainant may select either the jurisdiction where the domain name registrant resides, or (if the complainant wishes to inconvenience the registrant) the location of the

---

Agreement, available at http://www.godaddy.com/agreements/showdoc.aspx?pageid=REG_SA (last visited Sept. 13, 2011).

[2] *See* UDRP Rules, available at http://www.icann.org/en/dndr/udrp/uniform-rules.htm (last visited Sept. 13, 2011).

[3] *See* UDRP Policy, available at http://www.icann.org/en/dndr/udrp/policy.htm (last visited Sept. 13, 2011).

[4] *See* UDRP Rule 13 ("There shall be no in-person hearings (including hearings by teleconference, videoconference, and web conference), unless the Panel determines, in its sole discretion and as an exceptional matter, that such a hearing is necessary for deciding the complaint.").

[5] See UDRP Rule 3(b)(xiii) ("State that Complainant will submit, with respect to any challenges to a decision in the administrative proceeding canceling or transferring the domain name, to the jurisdiction of the courts in at least one specified Mutual Jurisdiction").

Randazza Legal Group
2 South Biscayne Blvd., Suite 2600; Miami, Florida 33131

registrar.[6] The practical result of these various provisions is that UDRP arbitration is not intended to be binding or final, and when court cases are filed to challenge the arbitration decision, they are brought in a venue of the Complainant's choosing.[7] In this case, the Defendant was the Complainant, and the Defendant chose the District of Arizona as its preferred jurisdiction.

In the interest of expediency, the UDRP does not include a full adversarial proceeding, complete with discovery, oral argument, or any of the other safeguards that are designed to ensure an equitable result. Moreover the process is ripe for abuse, as "information and belief" statements and similar evidentiary submissions are not subject to the penalty of perjury, which Defendant used to its advantage. The entire finding is usually based only on two documents: the complaint filed by the complainant, and the response filed by the respondent. To counterbalance this abbreviated dispute-resolution process, and to account for the possibility that occasionally the arbitration panel – not having the benefit of a developed record – may come to an erroneous conclusion, the UDRP specifically contemplates that a registrant may, prior to execution of the panel's decision to transfer the domain name away from him or her, file a lawsuit in the mutual jurisdiction <u>selected by the UDRP complainant</u> – the Defendant in this case – seeking releif for reverse domain name hijacking.[8] In the subsequent judicial proceedings, the parties then

---

[6] *See* UDRP Rule 1 (defining "Mutual Jurisdiction" as "a court jurisdiction at the location of either (a) the principal office of the Registrar . . . or (b) the domain-name holder's address as shown for the registration of the domain name in Registrar's Whois database at the time the complaint is submitted to the Provider").

[7] See UDRP Policy 4(k) ("The mandatory administrative proceeding requirements set forth in [this] Paragraph 4 shall not prevent either you or the complainant from submitting the dispute to a court of competent jurisdiction for independent resolution before such mandatory administrative proceeding is commenced <u>**or after such proceeding is concluded**</u>." (emphasis added)).

[8] *See* UDRP Policy 4(k) ("If an Administrative Panel decides that your domain name registration should be canceled or transferred, we [the registrar] will wait ten (10) business days (as observed in the location of our principal office) after we are informed by the applicable Provider of the Administrative Panel's decision before implementing that decision. We will then implement the decision unless we have received from you during that ten (10) business day period official documentation (such as a copy of a complaint, file-stamped by the clerk of the court) that you have

Randazza Legal Group
2 South Biscayne Blvd., Suite 2600; Miami, Florida 33131

challenge the sufficiency of one another's factual assertions, provide testimony as required, and take full advantage of the adversarial process to reach a thorough determination of the operative facts and law as applied to them. As discussed below, when a challenge is brought, the UDRP panel's decision is given zero weight.[9]

*c. An RDNH claim is not an "appeal," it is a de novo action.*

Although the Defense attempts to paint this action as an "improper appeal," the Defense completely mischaracterizes this proceeding. See, e.g., *Hawes v. Network Solutions, Inc.*, 337 F.3d 377, 386 (4th Cir. 2003) ("An action brought under § 1114(2)(D)(v) on the heels of an administrative proceeding [under the UDRP]. . . is independent of, and involves neither appellate-like review of nor deference to, the underlying proceeding."). See also *Storey*, 347 F.3d at 382. ("We agree with the First and Fourth Circuits that a claim brought by a domain name registrant under § 1114(2)(D)(v) seeks 'a declaration of nonviolation of the ACPA,' not requiring (or permitting) review of the UDRP panel's application of the UDRP's cybersquatting standard, but instead 'trump[ing] the panel's finding of noncompliance.'") (citing *Sallen* and *Hawes*). This is not an "appeal." This is a new action, seeking a declaration that the Plaintiff did not violate 15 U.S.C. § 1125(d). If the Court so finds, then Mr. Lurie keeps his property.

Bringing an RDNH claim bears no relationship to an action seeking to overturn a regular arbitration award. No findings by the UDRP panel are given any weight; a federal court gives a UDRP panelist's findings no deference when deciding an action under § 1114(2)(D)(v).

---

commenced a lawsuit against the complainant in a jurisdiction to which the complainant has submitted under Paragraph 3(b)(xiii) of the Rules of Procedure").

[9] *See Sect. II.d. infra. See also Weber-Stephen Products Co. v. Armitage Hardware and Building Supply, Inc.,* 2000 U.S. Dist. LEXIS 6335 at *7, 54 U.S.P.Q.2d 1766 (N.D. Ill. 2000) ("We conclude that this Court is not bound by the outcome of the ICANN administrative proceedings."); *see also Parisi v. Netlearning, Inc.,* 139 F. Supp. 2d 745, 752 (E.D. Va. 2001); *Broadbridge Media LLC v. Hypercd.com,* 106 F. Supp. 2d 505, 509 (S.D.N.Y. 2000).

*Barcelona.com*, 330 F.3d at 626; *Super-Krete Int'l, Inc. v. Sadleir*, 712 F. Supp. 2d 1023 (C.D. Cal. 2010) ("the findings of the WIPO panel are entitled to no deference here").

The UDRP decision is only relevant to the extent that it triggers Mr. Lurie's right to sue under § 1114(2)(D)(v). *Storey*, 347 F.3d at 383. See also *Barcelona.com*, 330 F.3d at 626 (UDRP panel decision "is relevant only to serve as the reason for [registrant's] bringing an action under § 1114(2)(D)(v)"); *Dluhos v. Strasberg*, 321 F.3d 365, 373-74 (3d Cir. 2003) (holding that 15 U.S.C. § 1114(2)(D)(v) requires the federal court to approach the issues raised in an action brought under that provision *de novo* rather than to apply the deferential review appropriate to actions governed by the Federal Arbitration Act); *Sallen*, 273 F.3d at 28 (explaining that "a federal court's interpretation of the ACPA supplants a [UDRP] panel's interpretation of the UDRP"). Thus, for this Court's purposes, the UDRP panelist's decision is relevant only to serve as the reason for the Plaintiff to assert jurisdiction under § 1114(2)(D)(v).

## III. Procedural History

Defendant was provided with a copy of the complaint on May 26, 2011. On July 4, 2011, Defendant's counsel was provided with a proper waiver of service of process with prepaid return envelope. After giving more than the thirty days required by Federal Rule of Civil Procedure 4(d)(1)(F) and having not receiving an executed service waiver, on August 11, 2011, Plaintiff effected formal service of process (Doc. # 7). Subsequently, Defendant returned the waiver of service form by email only in an attempt to waive formal service after completed. On September 2, 2011, Defendant submitted its Motion to Dismiss (Doc. # 10).

## IV. Argument

Defendant has failed to establish that Plaintiffs' Complaint should be dismissed under Rule 12(b)(6). Plaintiffs' Complaint properly alleges all of the elements required to plead a

Randazza Legal Group
2 South Biscayne Blvd., Suite 2600; Miami, Florida 33131

Randazza Legal Group
2 South Biscayne Blvd., Suite 2600; Miami, Florida 33131

claim for reverse domain name hijacking. 15 U.S.C. § 1114(2)(D)(v). The Complaint and its exhibits plainly establish this. Indeed, based on what is already in the record, the court could properly find as a matter of law that the Plaintiff did not violate 15 U.S.C. § 1125(d).

It is nonsense to suggest that this dispute should be transferred to Indiana. The Defendant has not only *consented* to jurisdiction in this Court, but the Defendant *insisted* upon this jurisdiction. (Doc. # 1-2 ¶ 11). Even if this were not the case, the Defense's assertion that "[t]he convenience of every single party and witness favors transfer of this action" is presented without support – as none exists. No facts have been produced to show that Jurisdiction is actually favorable for the Defendant's witnesses; in contrast, there is evidence that such a far-flung jurisdiction would be undesirable for Plaintiffs and their witnesses. For example, there are witnesses who will show that the Defendant's AIRFX trademark's lacks distinctiveness. These witnesses are located throughout the country, but primarily in the Southwestern states. Travel to a tertiary airport such as Indianapolis, rather than a major airport hub like Phoenix is clearly more inconvenient for virtually all relevant parties.

*a. Plaintiffs Have Properly Alleged a Claim for Reverse Domain Name Hijacking Under 15 U.S.C. § 1114(2)(D)(v), thus Dismissal Under FRCP 12(b)(6) is Improper.*

Dismissal under Rule 12(b)(6) is disfavored. *See Gilligan v. Jamco Dev. Corp,* 108 F.3d 256, 249 (9th Cir. 1997); *United States v. Redwood City,* 640 F.2d 963, 966 (9th Cir. 1981); *Cauchi v. Brown,* 51 F. Supp. 2d 1014, 1016 (E.D. Cal. 1999). A complaint will survive a motion to dismiss if it contains sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)).

Defendant moves to dismiss the claim under Fed. R. Civ. P. 12(b)(6), but fails to cite a single piece of authority in support of its position. Even if the Plaintiff simply filed a one-page statement refusing to consent to granting the Motion, it would be proper of this Court to rule in the Plaintiff's favor. *See In re Martin-Trigona*, 795 F.2d 9 (2d Cir. 1986) (denying party's motions even when unopposed); *see also Zimmerman v. Burge*, Case No. 06-cv-0176 2008 U.S. Dist. LEXIS 25154 at *8-9 (N.D.N.Y. Mar. 28, 2008) (finding that even when a motion is unopposed, the district court must decide whether the movant prevails, citing *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004)). However, the Plaintiff will provide the Court with ample support upon which it can rely to deny this frivolous motion.

Plaintiffs' Complaint (Doc. # 1) is sufficient to move forward. Plaintiff Lurie alleges that he is the Domain Name's registrant (*Id.* ¶¶ 48-49). The Domain Name's transfer would be an inevitability but for this action, which is accorded legal equivalency with being *actually* transferred, suspended or disabled in cases such as the one at bar.[10] (*Id.* ¶¶ 50-52) Defendant was notified of this action at the time it was filed, and later by service of the Complaint upon it. (*Id.* ¶¶ 53-54; Doc. # 7.) Finally, Plaintiff has alleged that its use of the Domain Name was not in violation of the ACPA (Doc. # 1 ¶¶ 55-59).

Under the standard set forth in 15 U.S.C. § 1114(2)(D)(v), and clarified in *Barcelona.com*, 330 F.3d at 626, and *Ricks*, 727 F. Supp. 2d at 936, Plaintiffs have alleged all of

[10] Courts have found that domain names scheduled to be transferred or cancelled as a result of UDRP proceedings are treated as if they have been transferred or cancelled, as such an outcome is "inevitable" without judicial intervention. *Sallen*, 273 F.3d at 25-26 n. 11. A reverse domain name hijacking complaint is properly brought where a Plaintiff has wrongfully lost a UDRP proceeding, as UDRP ¶ 4(k) compels the transfer of the domain name unless an appeal is brought under 15 U.S.C. § 1114(2)(D)(ii)(II). *Id.*; *accord Ricks*, 727 F. Supp. 2d at 936 (proceeding with reverse domain name hijacking litigation filed following an adverse UDRP decision, but before a transfer occurred). A UDRP decision requiring the transfer or cancellation of a domain name - even where such transfer or cancellation has not occurred – "triggers the right to sue." *Mann v. AFN Invs., Ltd.*, Case No. 07-cv-0083-BEN (CAB), 2007 U.S. Dist. LEXIS 54582 at *7 (S.D. Cal. July 27, 2007). Accordingly, the lack of the domain name's actual transfer is not an impediment in this case.

Randazza Legal Group
2 South Biscayne Blvd., Suite 2600; Miami, Florida 33131

Randazza Legal Group
2 South Biscayne Blvd., Suite 2600; Miami, Florida 33131

the elements required to establish a claim for reverse domain name hijacking. Defendant's Motion fails.

b. *Defendant Not Only Consented to This Court's Jurisdiction, but actually Selected it Rendering its arguments for Transfer of Venue Improper.*

Forum selection clauses are favored and enforced by Courts, and necessary in this case to determine the proper venue for Plaintiff to file suit to derail the implementation of the UDRP decision. 15 U.S.C. § 1114(2)(D)(v); *Swenson v. T-Mobile USA, Inc.,* 415 F. Supp. 2d 1101, 1104 (S.D. Cal. 2006) (quoting *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 280 (9th Cir. 1984)). Quite simply, when the Defendant chooses the venue, the Defendant should not be permitted to complain if he regrets his choice.

Under the UDRP Rules, Defendant is required to select a mutual jurisdiction in which it will submit to any challenges to the UDRP proceeding. UDRP Rule 3(b)(xiii) requires that the Complainant:

> State that Complainant will submit, with respect to any challenges to a decision in the administrative proceeding canceling or transferring the domain name, to the jurisdiction of the courts in at least one specified Mutual Jurisdiction.

In order to comply with this requirement, Defendant had the option of choosing to submit to disputes either a) where the registrant lives (in this case, California) or b) where the domain name registrar is (in this case, Arizona). Presumably, Defendant considered these two options and chose the one it found most convenient, or least likely to be convenient to Mr. Lurie.

Randazza Legal Group
2 South Biscayne Blvd., Suite 2600; Miami, Florida 33131

Although Defendant may now regret its prior jurisdictional choice, its UDRP Complaint filed as an exhibit to the Complaint (Doc. # 1-2) shows that it clearly selected it:

> [11.] **MUTUAL JURISDICTION**
>
> The Complainant will submit, with respect to any challenges to a decision in the administrative proceeding canceling or transferring the domain name, to *[choose one jurisdiction]:*
> *__X___a) the location of the principal office of the concerned registrar or*
> *_____b) where the Respondent is located, as shown by the address(es) given for the domain name holder in the Whois Database at the time of the submission of the Complaint to FORUM.* UDRP Rule 3(b)(xiii).

As acknowledged two pages earlier in the same UDRP Complaint, Defendant was well aware that the concerned registrar in this case, GoDaddy.com, Inc., has its principal office in this judicial district:

> [6.] **DISPUTED DOMAIN NAME(S)**
>
> [a.] The following domain name is the subject of this Complaint: UDRP Rule 3(b)(vi).
>
> *airfx.com*
>
> [b.] Registrar Information: UDRP Rule 3(b)(vii).
>
> [i.] Registrar's Name: *GoDaddy.com, Inc.*
> [ii.] Registrar Address: *14455 N. Hayden Rd, Ste. 219, Scottsdale, AZ 85260*
> [iii.] Telephone Number: *(480) 505-8899*
> [iv.] E-Mail Address: *unknown*
> [v.] Fax: *(480) 505-8844*

The Defendant asked that this case be brought here, and the Defendant must live with that choice. Defendant may now suffer from forum selection remorse, but this is a self-inflicted wound to which the Court should not properly tend.

Hamstrung by the Defendant's forum selection, the Plaintiff had no choice but to bring this case in Arizona. A Complaint to stop the transfer or cancellation of a domain name **must** be brought in the proper jurisdiction, making the UDRP Rules' mutual jurisdiction requirement particularly important. *See* UDRP Rules ¶ 4(k) (requiring legal action to stay implementation of

Randazza Legal Group
2 South Biscayne Blvd., Suite 2600; Miami, Florida 33131

a domain name transfer or cancellation to be brought in a jurisdiction "where complainant has submitted"); *Barcelona.com*, 330 F.3d at 626-27 (requiring suits to stop domain name transfers or cancellations to be brought in a jurisdiction where complainant has consented to suit). Defendant's selection of this District in the underlying UDRP proceeding not only confers this Court with jurisdiction over this action, but is essential to specifying from which court Plaintiff may seek relief; if Defendant had not specified a district to which it consented to jurisdiction, its UDRP complaint would have been defective. *See Mann*, *2007 U.S. Dist. LEXIS 54582* at * 4-5. The Defendant *forced* the Plaintiff to bring this action in this District – it should not complain now that its choice seems inconvenient.

Contractual forum selection clauses, which are mutually agreed upon are generally upheld. "Forum selection clauses 'should be respected as the expressed intent of the parties.'" *Swenson,* 415 F. Supp. 2d at 1104 (quoting *Pelleport Investors*, 741 F.2d at 280). They are presumptively valid, and thus "should be honored 'absent some compelling and countervailing reason.'" *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004) (quoting *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 12, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972)). A party challenging a forum selection clause "bears a 'heavy burden of proof.'" *Murphy*, 362 F.3d at 1140 (quoting *M/S Bremen*, 407 U.S. at 17). A valid forum selection clause "may act as a waiver to objections to personal jurisdiction." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 281 n. 11 (4th Cir. 2009) (citing *Nat'l Equip. Rental, Ltd. v. Szukhent,* 375 U.S. 311, 315-16, 84 S. Ct. 411, 11 L. Ed. 2d 354 (1964)). In fact, a forum selection clause, "standing alone, is enough to confer personal jurisdiction on a nonresident defendant." *Costar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 668 (D. Md. 2009) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n. 14, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)).

Randazza Legal Group
2 South Biscayne Blvd., Suite 2600; Miami, Florida 33131

In this case, the forum selection is a bit more extreme than the typical contractual forum selection clause. The parties did not bargain for the decision, but rather it was unilaterally forced upon the Plaintiff by the Defendant. Had Plaintiff initiated this matter anywhere else, the erroneous UDRP decision would have been implemented, the Plaintiff's property would have been transferred to the Defendant, and the Plaintiff would have already lost. In fact, if the Court transfers this action out of this District, the registrar will be permitted to award the domain name to the Defendant. Essentially, if the Court grants Defendant's motion to transfer, it will likely function as a full adjudication of the dispute.

Although the Defendant selected this jurisdiction, the Defendant claims that Indianapolis would be more convenient for "every single party and witness" (Doc. # 10 at 9.) However, this statement is as strange as it is unsupportable. A review of the geographic distribution of both parties and nonparties reveals that Indianapolis, Indiana, despite Defendant's unsupported assertions to the contrary, is the least likely place where venue would be proper. Although Defendant maintains a registered office in Indianapolis, its principal – Jeff Schwindt – appears to be employed by a company located in Chicago, Illinois, called Interfere, Inc. d/b/a IPXtract.[11] IPXtract, in turn, shares the same physical address as Defendant's counsel of record in this matter, in Chicago – not Indianapolis. Most, if not all, of the evidence needed to establish the Plaintiff's claim can be found in California, and primarily within its Central District or adjacent to it, including witness and expert testimony from figures within the skydiving, indoor skydiving and wind tunnel community. Moreover, Plaintiff Lurie, who possesses much of the evidence needed to substantiate his claim, is located in the Central District of California. While Defendant

[11] *See* IPXtract "about us" webpage, available at http://ipxtract.com/about.html (last visited Sept. 15, 2011).

Randazza Legal Group
2 South Biscayne Blvd., Suite 2600; Miami, Florida 33131

does not reside there, all of the discovery and other evidence the Defendant could need to acquire and review is located there, and therefore would ultimately be the more convenient district.

If a transfer were granted at all, it should be to the Central District of California, where the Plaintiff resides, where the Plaintiff would have preferred to bring this case, and where the true injury occurred. The onus should not be on Lurie to travel across the country, to Indiana, to preserve his valid property rights.

## V. Conclusion

The Plaintiffs have sufficiently and fully pled their claim for reverse domain name hijacking under 15 U.S.C. § 1114(2)(D)(v) against the Defendant, including each element within that cause of action. In particular, the Plaintiffs have sufficiently pled, if not proven conclusively, that they are not in violation of the ACPA, as required to sustain a reverse domain name hijacking claim. Upon the Court's denial of Defendant's Motion to Dismiss, the Defendant is not entitled to have the case transferred to a different venue. In addition to consenting to this Court's jurisdiction, such a venue transfer is both unnecessary and inequitable. The Defendant's Motion (Doc. # 10) must fail on all counts.

Dated this 16th Day of September, 2011.

RANDAZZA LEGAL GROUP

s/ Marc Randazza
Marc J. Randazza, Esq.
Arizona Bar No. 027861
MJR@randazza.com
Randazza Legal Group
2 South Biscayne Blvd., Suite 2600
Miami, Florida 33131
Tel. (888) 667-1113
Fax (305) 437-7662

*Attorney for Plaintiffs*