**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AIRFX.com; Marc Lurie, | )   CV 11-01064-PHX-FJM |
| Plaintiffs, | ) |
| | )   **ORDER** |
| vs. | ) |
| | ) |
| AirFX LLC, | ) |
| Defendant. | ) |
| | ) |

The court has before it defendant's motion to dismiss or transfer (doc. 10), plaintiffs' response (doc. 11), and defendant's reply (doc. 13). We also have before us plaintiffs' motion for fees and costs (doc. 12), defendant's response (doc. 14), and plaintiffs' reply (doc. 17). Counsel are reminded that all filings with this court must comply with LR Civ 7.1.

**I**

Plaintiff Lurie is an indoor skydiving enthusiast and an inventor. In 2004, Lurie began investing in SkyVenture brand wind tunnel facilities. Wind tunnels use forced air to simulate free-fall, which allows skydivers to practice aerial stunts. Beginning in 2006, Lurie embarked on a marketing effort to adopt a new brand for his wind tunnels. As a result of these efforts, Lurie adopted the trade name "AIRFX." Lurie sold his SkyVenture facilities and plans to use the AIRFX brand to market a new and improved line of wind tunnels that he is developing. Plaintiffs' wind tunnel business has not been publically launched. In preparation for launch, Lurie has identified a manufacturing partner and consulted with an

aerodynamic specialist. He has also located a potential first customer, who owns and operates one of the biggest skydiving facilities in the country.

After Lurie decided to use the trademark AIRFX, he sought to register airfx.com as his internet domain name. However, this domain had already been registered. Lurie purchased the domain name from the then-owner, which was transferred to him on February 2, 2007. GoDaddy.com, Inc., located in Scottsdale, Arizona, is the sponsoring registrar for airfx.com. Plaintiffs do not plan on officially launching the airfx.com website until their first completed facility is launched. Plaintiffs contend that launching a website contemporaneously with launching a new product is a common marketing strategy.

Defendant, an Indiana LLC, owns a trademark for "AIRFX" in connection with motorcycle and vehicle parts. About one year after plaintiffs acquired the airfx.com domain name, an employee of defendant contacted Lurie and threatened to sue if he did not sell the domain to defendant. Lurie refused. Defendant contacted plaintiffs again in February 2010, stating that plaintiffs "must turn over control" of the website. Compl. at 8. Lurie again refused, explaining that the domain name was not for sale. In April 2011, defendants submitted a domain dispute complaint pursuant to the Uniform Domain Name Dispute Resolution Policy ("UDRP").[1] UDRP rules required defendant to explicitly consent to a jurisdiction where challenges to the UDRP decision could be brought. Defendant expressly consented to jurisdiction in this District, the place where the registrar for airfx.com, GoDaddy.com, Inc., is located. The UDRP panel issued its decision on May 16, 2011 ordering that airfx.com be transferred to defendant. Pursuant to its domain name dispute procedure, GoDaddy.com delayed transferring airfx.com to defendant. This procedure provided ten business days for plaintiff to file this action.

Plaintiffs subsequently filed this action on May 27, 2011 asserting one claim for

---

[1] Registrars are required to follow the UDRP, which governs how most internet domain name disputes must be handled before a registrar proceeds with transferring, cancelling, or suspending a domain name. The UDRP can be found at http://www.icann.org/en/udrp/udrp-policy-24oct99.htm.

- 2 -

1  reverse domain name hijacking pursuant to 15 U.S.C. § 1114(2)(D)(v).  A request for waiver
2  of service of process was mailed to defendant's counsel on July 4, 2011.  Formal service of
3  process was executed on August 11, 2011 (doc. 7).  Defendant's counsel emailed the signed
4  waiver of service on August 15, 2011.  Defendant moves to dismiss pursuant to Rule
5  12(b)(6), Fed. R. Civ. P.  Alternatively, defendant moves to transfer the case to the District
6  Court of the Southern District of Indiana.  Plaintiff seeks to recover costs of service pursuant
7  to Rule 4(d)(2), Fed. R. Civ. P.

**II**

9  In 1999, the Lanham Act was amended by the Anticybersquatting Consumer
10 Protection Act (ACPA) in an effort to redress the bad-faith registration of internet domain
11 names for profit, a practice known as cybersquatting.  Barcelona.com, Inc. v. Excelentisimo
12 Ayuntamiento de Barcelona, 330 F.3d 617, 624 (4th Cir. 2003).  Cybersquatters who violate
13 the ACPA are said to hijack a domain name from someone who, because of his trademark
14 ownership, would normally be expected to possess the right to use that domain name.
15 Conversely, if a trademark owner "overreaches" when exercising his ACPA rights, he
16 "reverse hijacks" the domain name from the person who registered it.  Id. at 625 n.1.  The
17 ACPA's reverse domain name hijacking provision allows an aggrieved domain name
18 registrant to file a civil action to establish that his use of the domain name does not violate
19 the "Act."  See 15 U.S.C. § 1114(2)(D)(v); Barcelona.com, Inc., 330 F.3d at 625 n.1; Ricks
20 v. BMEzine.com, LLC, 727 F. Supp. 2d 936, 959 (D. Nev. 2010).  A registrant must show
21 that his conduct was not unlawful just under the ACPA, not under the whole of the Lanham
22 Act.  Ricks, 727 F. Supp. 2d at 960.

23 Defendant moves to dismiss this action for failure to state a claim.  According to
24 defendant, plaintiffs must show that the defendant both knew of the plaintiffs' legitimate
25 interest in the domain name and harassed plaintiffs.  Defendant argues that plaintiffs have
26 not made a showing that defendant harassed plaintiff by "merely defending [its] own
27 trademark rights and bringing the (successful) UDRP action."  Mot. to Dismiss at 6.  To
28 support this argument, defendant cites to UDRP panel decisions.  But federal courts do not

- 3 -

defer to UDRP decisions. See, e.g., Barcelona.com, Inc., 330 F.3d at 626 ("any decision made by a panel under the UDRP is no more than an agreed-upon administration that is not given any deference under the ACPA") (emphasis removed). Instead, a reverse domain hijacking claim under the ACPA requires a plaintiff to prove four elements: (1) plaintiff is a domain name registrant; (2) plaintiff's domain name was "suspended, disabled, or transferred under a policy implemented by a registrar as described in 15 U.S.C. § 1114(2)(D)(ii)(II);" (3) the trademark owner prompting the domain name to be transferred "has notice of the action;" and (4) plaintiff's use or registration of the domain name is not unlawful. Ricks, 727 F. Supp. 2d at 959 (quoting Barcelona.com, Inc., 330 F.3d at 626)).

Taking plaintiffs' allegations as true, they have stated a plausible reverse domain hijacking claim under the ACPA. First, plaintiffs allege that Lurie has owned the domain name airfx.com since February 2007. Next, plaintiffs allege that airfx.com is "subject to imminent transfer" as a result of the UDRP decision. Compl. at 12. Although the Ninth Circuit has not yet considered the issue, other courts have held that a plaintiff can bring an action under 15 U.S.C. § 1114(2)(D)(v) as long as the domain name has been ordered to be transferred pursuant to the UDRP, even though the transfer is not complete. Mann v. AFN Invs., Ltd., CV-07-0083, 2007 WL 2177030 at *2 (S.D. Cal. July 27, 2007) (discussing decisions from the First, Second, and Fourth Circuits and agreeing that a UDRP decision to transfer the domain name "triggers the right to sue"). We agree that the UDRP decision in this case, which ordered the transfer of airfx.com from plaintiff to defendant, satisfies the ACPA. Plaintiffs also allege that defendant, the UDRP complainant, had immediate notice of this action's filing by email. Defendant has not contested notice.

Finally, plaintiffs allege that their use of airfx.com is not unlawful under the ACPA. A person violates the ACPA when he

> (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
> (ii) registers, traffics in, or uses a domain name that--
>     (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

- 4 -

> (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
>
> (III) is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

15 U.S.C. § 1125(d)(1)(A). See also Ricks, 727 F. Supp. 2d at 959 (quoting Barcelona.com, Inc., 330 F.3d at 626)).[2]  A court considering whether a domain-name owner possesses bad faith intent may consider several factors, including the owner's trademark rights in the domain name, the owner's prior usage "in connection with the bona fide offering of any goods or services," the owner's intent to divert the trademark owner's customers, provision of false contact information when applying for domain name registration, and the extent to which the trademark alluded to in the domain name registration is famous and distinctive. 15 U.S.C. § 1125(d)(1)(B)(i).  Plaintiffs allege that they neither registered nor used the airfx.com domain name in bad faith.  Specifically, plaintiffs allege that their conduct in developing the AIRFX brand and registering the airfx.com website shows that plaintiffs, among other things, have made extensive use of the AIRFX mark, chose a domain name that reflects plaintiffs' brand of wind tunnels, have not used defendant's trademark, have never offered to sell the domain name, and do not seek to divert defendant's customers.  In addition, plaintiffs allege that defendant's trademark is not famous or distinctive.

Defendant does not address plaintiffs' allegations in its reply, relying instead on the

---

[2] The day before briefing for this motion was complete, the Ninth Circuit issued a decision defining the scope of § 1125(d)(1). The court held that § 1125(d)(1)'s references to "registration" refers "only to the initial registration" of a domain name. GoPets Ltd. v. Hise, __ F.3d __, 2011 WL 4394353 at *6 (9th Cir. 2011).  The court found "no basis in ACPA to conclude that a right that belongs to an initial registrant of a currently registered domain name is lost when that name is transferred to another owner," because of the general principle that an owner can sell all the rights he possesses in property. Id.  Thus, a company's re-registration of a domain name that was first registered "long before [trademark owner] registered its service mark" did not violate the ACPA, because the re-registration "was not a registration within the meaning of § 1125(d)(1)." Id.  Here, plaintiffs contend that Lurie purchased the airfx.com domain name from its prior owner in February 2007. It is unclear from the record, however, when the airfx.com domain name was originally registered.

- 5 -

findings of the UDRP panel, which are not binding on this court, and its perception that federal law requires a plaintiff to show harassment in order to prevail on a reverse hijacking action, which it does not. Because plaintiffs have pled the required elements of an ACPA reverse domain name hijacking claim, we deny defendant's motion to dismiss.

### III

In the alternative, defendant moves for a transfer of this action to the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a). Section § 1404(a) permits a district court, "[f]or the convenience of parties and witnesses, in the interest of justice," to transfer a civil action to another district where it could have been filed. Defendant argues that the Southern District of Indiana is appropriate because it is the district in which defendant resides, the district where all documents relevant to its federal trademark reside, and where "all relevant witnesses reside." Mot. to Dismiss at 7.

But defendant was the party that selected this District as the forum to hear any objections to the UDRP panel decision. Defendant was required in its UDRP complaint to submit to jurisdiction, in the event that plaintiffs challenged a decision "transferring the domain name," in either the location of the registrar's office or where plaintiffs are located. See Compl., ex. B at 5. The UDRP complaint listed an Arizona address for the registrar, GoDaddy.com, Inc. Id. at 3. Defendant selected the registrar's location as its jurisdiction of choice. Id. at 5. Under UDRP rules, plaintiffs were required to bring suit in a jurisdiction where defendant submitted in order to prevent the transfer of airfx.com from occurring. See Barcelona.com, Inc., 330 F.3d at 626-27. That is precisely what plaintiffs did when they filed the instant action in this District, the location in which defendant expressly chose to litigate.

Forum selection clauses are presumptively valid. A party challenging a selection clause bears the heavy burden to show either that enforcement of the clause would be unjust, "or that the clause was invalid." Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1140 (9th Cir. 2004). There are three ways in which enforcement may be unreasonable: (1) the clause is the result of "fraud or overreaching"; (2) "the party wishing to repudiate the clause would

1 effectively be deprived of his day in court were the clause enforced," and (3) enforcement
2 would undermine a "strong public policy of the forum" where the action was filed. Id.
3 (quoting Richards v. Lloyd's of London, 135 F.3d 1289, 1294 (9th Cir. 1998)). Defendant
4 has not suggested that it will be deprived of its day in court if its forum selection is enforced.
5 Neither has it argued that its selection involved fraud. This action will require this court to
6 apply federal law, which should not offend strong public policies of Arizona. In sum,
7 defendant has not met the heavy burden of showing why the venue it selected when it signed
8 the UDRP complaint in April 2011 has suddenly become unreasonable. Defendant's motion
9 to transfer is denied.

**IV**

11 Finally, we turn to plaintiffs' motion to recover the costs they incurred, including
12 attorney's fees, in preparing and sending the waiver of service, in serving defendant, and in
13 preparing and filing the instant motion. Plaintiffs seek to recover $4,086.30.

14 Rule 4(d), Fed. R. Civ. P. governs waiver of service. A plaintiff may request that an
15 eligible defendant waive service by following the requirements set forth in Rule 4(d). If a
16 defendant fails to waive service without good cause, plaintiff can recover certain costs. Id.
17 Fulfilling the rule's requirements is a "condition precedent" to recovering costs of service.
18 Spivey v. Bd. of Church Extension & Home Mission of the Church of God, 160 F.R.D. 660,
19 663 (M.D. Fla. 1995). Defendant argues that plaintiffs are not entitled to costs because they
20 failed to comply with Rule 4(d)(1)(F), Fed. R. Civ. P. The rule requires a plaintiff to "give
21 the defendant a reasonable time of at least 30 days after the request was sent--or at least 60
22 days if sent to the defendant outside any judicial district of the United States--to return the
23 waiver." Id. Defendant first contends that plaintiffs' failure to include an expected return
24 date on the waiver form constitutes non-compliance. Defendant is mistaken. Nothing in
25 Rule 4(d)(1) requires plaintiff to state the required return date in the waiver form. The notice
26 and waiver request must "name the court where the complaint was filed, must "inform the
27 defendant. . . of the consequences of waiving and not waiving service," and "state the date
28 when the request is sent." Rule 4(d)(1). Lest there be any confusion as to the waiver form's

1    content, a sample, Form 6, Fed. R. Civ. P., is provided in the Appendix.  "The forms in the
2    Appendix suffice under these rules."  Fed. R. Civ. P. 84.  Notably, nowhere in Form 6 is
3    there a place to fill in a required return date.  Plaintiffs' waiver of service form copied the
4    language of Form 6 exactly.  See Mot. for Fees, ex. C.  Therefore, the absence of a return
5    date on the waiver form did not constitute noncompliance with Rule 4(d)(1)(F).

6    Defendant's next quarrel is that plaintiffs' failure to communicate an expected return
7    date of the waiver violates Rule 4(d)(1).  But nothing in Rule 4(d)(1) requires plaintiff to
8    provide defendant with an expected return date.  Rule 4(d)(1)(F) demands that plaintiffs
9    "give" the defendant at least 30 days after the request was sent to return the waiver.  This is
10   exactly what plaintiffs did in this case.  The waiver of service packet was mailed to
11   defendant's counsel on July 4, 2011.  Not having received a response, plaintiffs served
12   defendant on August 11, 2011.  Plaintiffs waited thirty-seven days before serving defendant.

13   Plaintiffs have presented evidence of their compliance with Rule 4(d)(1).  It is
14   undisputed that defendant's counsel only submitted a signed waiver four days after defendant
15   was served.  Under Rule 4(d)(2), defendant must show "good cause" for its failure to return
16   the requested signed waiver to avoid imposition of costs.  Defendant does not directly
17   address the issue of good cause in its response.  However, it appears that defendant offers
18   two reasons for its failure to timely waive service.  First, defendant blames plaintiffs for
19   failing to contact defendant's counsel to confirm a date by which the waiver was expected.
20   Defendant complains that plaintiffs "never contacted counsel. . . to confirm receipt," "never
21   drafted a cover letter that. . . provided an expected date of return," and "never contacted
22   counsel [] to determine whether [defendant] intended to waive service."  Opp. to Mot. at 3.
23   As discussed above, none of these events are required by Rule 4(d).  All that was required
24   was that plaintiffs wait at least thirty days prior to initiating service.  It is not plaintiffs'
25   responsibility to remind defendant of upcoming deadlines.  That is why parties retain
26   counsel.

27   Defendant next complains that plaintiffs failed to include a self-addressed stamped
28   envelope with the waiver request packet.  Plaintiffs presented evidence that they did.  See

- 8 -

1 Mot. for Fees, ex. A. Resolution of this point, however, is not critical to the outcome.[3] The
2 plain language of Rule 4(d)(1)(F) placed defendant on notice that plaintiffs could commence
3 with service thirty days after July 4, 2011, the date the request was mailed. Defendant
4 confirms that it received the package on July 13, 2011. At this point, plaintiffs were still
5 required to wait three weeks before initiating service of process. Even if a self-addressed
6 stamped envelope was not included, as defendant claims, in the three weeks that elapsed
7 defendant's counsel could have (a) called plaintiffs' counsel to request an envelope, (b)
8 emailed plaintiff's counsel concerning the discrepancy, (c) sent the signed form back at their
9 own expense and requested plaintiff to pay their mailing costs, (d) requested plaintiffs'
10 counsel to provide an account number for a service such FedEx or DHL by which the form
11 could be returned at plaintiffs' expense, or (e) emailed the signed form as an attachment.
12 Instead, defendant chose to take no action until August 15, 2011 (four days after service was
13 complete), when counsel finally emailed the signed form. Doing nothing is not good cause.

14 Because the defendant has not shown good cause for its failure to timely return the
15 signed waiver, we "must impose" on defendant both the expenses plaintiffs "later incurred
16 in making service," and "reasonable expenses, including attorney's fees, of any motion
17 required to collect those service expenses." Fed. R. Civ. P. 4(d)(2). Plaintiffs provided an
18 itemized lists of their costs relating to service and this motion. Mot. for Fees, ex. H.
19 Defendant did not object to the reasonableness of these costs. Only costs incurred after the
20 time for defendant to return the waiver expires are recoverable. Fed. R. Civ. P. 4 Advisory
21 Committee Notes, 1993 Amendments. Attorney's fees are only recoverable for the motion

---

[3] A plaintiff's failure to include a pre-paid means of return as required by Rule 4 may foreclose the recovery of plaintiff's costs. See, e.g., Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 n.1 (4th Cir. 1984). Given the widespread availability of email as a low-to-no cost option for returning a signed document, defendant's argument that plaintiffs allegedly failed to include a prepaid means of return despite compliance with all other aspects of Rule 4(d)(1) would not in our view foreclose plaintiffs' ability to recover costs, especially when defendant made no effort to contact plaintiffs and were not otherwise prevented from returning the form using alternative methods.

to collect costs, not for the effort expended in arranging for service. <u>Morales v. SI Diamond Tech., Inc.</u>, 98-CV-8309, 1999 WL 144469 at *3 (S.D.N.Y. Mar. 17, 1999). Plaintiffs are therefore entitled to recover $93.00 in service costs and $2,220.00 in costs and attorney's fees relating to their motion to recover fees.

## V

**IT IS ORDERED DENYING** defendant's motion to dismiss or transfer (doc. 10).

**IT IS ORDERED GRANTING** plaintiffs' motion for fees and costs in the amount of $2,313.00 (doc. 12).

DATED this 20th day of October, 2011.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge