1    David Oskin, Esq.
2    AZ Admission Pro Hac Vice
3    IL Bar No. 6290390
4    Caliber IP, LLC
5    150 N. Michigan Ave., Ste. 2800
6    Chicago, IL 60601
7    Tel. (312) 890-2527
8    Fax (312) 277-9002
9
10   *Attorney for Defendants*
11
12            **IN THE UNITED STATES DISTRICT COURT**
13              **FOR THE DISTRICT OF ARIZONA**
14
15   AIRFX.COM  and Marc Lurie,              )
16            Plaintiffs,                    )      Civil Action No. 2:11-cv-01064-FJM
17   vs.                                     )
18                                           )      DEFENDANT'S ANSWER,
19   AirFX, LLC, An Indiana LLC              )      COUNTERCLAIMS AND
20            Defendant/Counter-Plaintiff    )      THIRD PARTY CLAIMS
21   vs.                                     )
22                                           )
23   Juno Holdings, Inc. a California Corporation )
24   Pedal Logic, LP, a California Partnership )
25            Third party Defendants         )
26   _____    )
27
28       Defendant, AirFX, LLC ("AirFX"), for its Answer and Counterclaims to Plaintiffs'

29   Complaint, states as follows.

30       1.      This Court has subject matter jurisdiction over this action because:  (i) it involves

31   a federal question; (ii) it involves a federally registered trademark; and (iii) it requires a

32   declaration of rights and other legal relations.  *See* 28 U.S.C. §§ 1331 ("The district courts shall

33   have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of

34   the United States."); 1338(a) ("The district courts shall have original jurisdiction of any civil

35   action arising under any Act of Congress relating to . . . trademarks."); and 2201(a) ("In a case of

36   actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an

37   appropriate pleading, may declare the rights and other legal relations of any interested party

1    seeking such declaration, whether or not further relief is or could be sought.").

2    Answer:        Admitted.

3          2.     Venue is proper in this Judicial District because the property that is the subject of

4    the action, the <airfx.com> domain name, is located here.  *See* 28 U.S.C. § 1391(b) ("A civil

5    action wherein jurisdiction is not founded solely on diversity of citizenship may . . . be brought

6    only in . . . (2) a judicial district in which . . . a substantial part of property that is the subject of

7    the action is situated . . . .").  In addition, the relevant sponsoring registrar, GoDaddy.com, Inc.

8    ("GoDaddy"), is located within this Judicial District.

9    Answer:        Admitted that GoDaddy.com, Inc. is located within this Judicial District. AirFX is

10   without sufficient information to affirm or deny the remaining allegations of this paragraph, and

11   therefore denies the same.

12         3.     Pursuant to the Uniform Domain Name Dispute Resolution Policy ("UDRP")

13   Paragraph 3(b)(xiii), the Complainant (in this case, now Defendant) is required to explicitly

14   consent to a "mutual jurisdiction," in which challenges to a decision under the UDRP may be

15   brought by the Respondent (in this case, now Plaintiff Lurie). Defendant expressly consented to

16   jurisdiction in this District for actions such as this one. (Doc. No. 1-2, § 11.)

17   Answer:        Pursuant to the Order dated October 20, 2011, AirFX admits the allegations of

18   this paragraph.

19         4.     Plaintiff AIRFX.com is an unincorporated business entity doing business as

20   AIRFX since 2006. It is engaged in the research, development, and marketing of indoor

21   skydiving equipment, namely wind tunnels for indoor skydiving.

22   Answer:        AirFX is without sufficient information to admit or deny the allegations in this

23   paragraph, and therefore denies the same.

1          5.          Plaintiff Marc Lurie ("Lurie") is an individual domiciled in the State of

2    California, and the owner of the AIRFX unregistered trademark for indoor skydiving equipment.

3    Answer:          Admitted that Lurie is an individual domiciled in the State of California. Denied

4    as to the remaining allegations.

5          6.          Defendant is an Indiana LLC, organized in 2008 (two years after the Plaintiffs'

6    AIRFX rights were established), which sells motorcycle parts.

7    Answer:          Admitted that AirFX is an Indiana LLC that sells motorcycle parts, among other

8    items.

9          7.          Plaintiff Lurie is an indoor skydiving enthusiast and an inventor / entrepreneur.

10   (Doc. No. 1-1, ¶ 2.) For many years, Lurie has been personally and professionally interested in

11   indoor skydiving and related activities. (Doc. No. 1-1, ¶ 4.) In particular, Plaintiff Lurie has

12   invested in multiple wind tunnel facilities – which, by using forced air, simulate the upward draft

13   of "free-fall" and permit a skydiver to practice aerial maneuvers, without the need of a plane to

14   jump out of, or the necessity of a parachute. (Doc. No. 1-1, ¶ 3.)

15   Answer:          AirFX is without sufficient information to affirm or deny this allegation, and

16   therefore denies the same.

17         8.          Plaintiff Lurie's active participation in this field dates to 2004, when he first

18   invested in a "SkyVenture" brand wind tunnel. Plaintiff Lurie subsequently invested in multiple

19   SkyVenture-brand wind tunnels, including tunnels in Orlando, Florida, and at Universal Studios,

20   California. Screen captures of publicly available company information, showing Lurie's

21   involvement in such entities since as early as 2004, have been provided herewith as Composite

22   Exhibit E. (Doc. No. 1-5.)

1   Answer:        AirFX is without sufficient information to admit or deny the allegations in this

2   paragraph, and therefore denies the same.

3          9.      In early 2006, Lurie began a concerted marketing effort for his various wind

4   tunnel holdings, wherein he intended to adopt a new brand for the wind tunnel operations that he

5   owned in California and Florida. Lurie thereupon instructed Jillian Elliott, the then-Vice

6   President of Marketing for his wind tunnel companies, to develop a brand that could be used in

7   association with the wind tunnels. A true and correct copy of a signed letter from Ms. Elliot, who

8   no longer works for Lurie, describing Plaintiffs' plan to develop a new brand name, has been

9   submitted herewith as Exhibit D. (Doc. No. 1-4.)

10  Answer:        AirFX is without sufficient information to admit or deny the allegations in this

11  paragraph, and therefore denies the same.

12         10.     The trade name developed through these efforts was "AIRFX." The name is

13  suggestive of the forced air used to create the skydiving "effect" in one of the Plaintiffs' wind

14  tunnels – hence the name AIRFX, an analog to "Air Effects."

15  Answer:        AirFX is without sufficient information to admit or deny the allegations in this

16  paragraph, and therefore denies the same.

17         11.     Ultimately, instead of utilizing the "AIRFX" brand in connection with his existing

18  SkyVenture holdings, Plaintiff Lurie decided to sell his SkyVenture facilities and investments

19  and utilize the "AIRFX" brand with a new line of tunnels that, he believes, will offer better

20  technical capabilities and revenue opportunities. A true and correct copy of a signed letter from

21  Alan "Buzz" Fink, owner and operator of one of the largest skydiving facilities in the United

22  States, confirming Lurie's plans, has been submitted herewith as Exhibit H. (Doc. No. 1-8.)

1    Answer:        AirFX is without sufficient information to admit or deny the allegations in this

2    paragraph, and therefore denies the same.

3            12.     Buzz Fink is a potential purchaser of Lurie's new wind tunnels, which will be

4    sold under the AIRFX brand name.

5    Answer:        AirFX is without sufficient information to admit or deny the allegations in this

6    paragraph, and therefore denies the same.

7            13.     In exploring potential brand names, Ms. Elliot tested a handful of names utilizing

8    the word "air" and suggesting the sport of skydiving combined with images of technological

9    innovation – one of which was the name "AIRFX." (*See* Doc. No. 1-4.)

10   Answer:        AirFX is without sufficient information to admit or deny the allegations in this

11   paragraph, and therefore denies the same.

12           14.     While evaluating branding strategies, Ms. Elliot advised Lurie to procure domain

13   name registrations corresponding to the early frontrunners, "AIRXTREME," "AIR-XTREME,"

14   "AIROBOD," "AEROBOD." A letter dated July 12, 2006, signed by Lurie, and confirming

15   purchase of the domain name registrations for "AIRXTREME.COM" and

16   "AIRXTREME.COM" from a third party has been submitted herewith as Exhibit F. (Doc. No. 1-

17   6.)

18   Answer:        AirFX is without sufficient information to admit or deny the allegations in this

19   paragraph, and therefore denies the same.

20           15.     After completion of market testing for the potential wind tunnel names, Lurie

21   determined a later developed candidate, "AIRFX," to have the most marketing appeal, and

22   accordingly he decided the that this brand, trademark, and domain name would provide the most

23   advantageous brand recognition, degree of suggestiveness, and most memorable web address for

1    his indoor skydiving wind tunnel business.

2    Answer:        AirFX is without sufficient information to admit or deny the allegations in this

3    paragraph, and therefore denies the same.

4        16.        Having decided upon the use of the AIRFX trademark for skydiving equipment,

5    Lurie sought to register <airfx.com>, but was disappointed to find that a domain name speculator

6    had already registered the domain.

7    Answer:        AirFX is without sufficient information to admit or deny the allegations in this

8    paragraph, and therefore denies the same.

9        17.        Undeterred in his quest to brand his company and equipment with the AIRFX

10   mark, in January 2007, Lurie submitted a $2,100 bid to purchase the domain name AIRFX.com

11   from its then-current owner. (Doc. No. 1-1, ¶ 12.) A true and correct copy of the purchase offer

12   confirmation for <airfx.com> has been submitted herewith as Exhibit G. (Doc. No. 1-7.)

13   Answer:        AirFX is without sufficient information to admit or deny the allegations in this

14   paragraph, and therefore denies the same.

15       18.        While Plaintiffs found the $2,100 purchase price to be daunting, given the

16   expensive preparations and expensive marketing that Plaintiffs had engaged in and planned to

17   engage in, it was seen as a reasonable cost. (Doc. No. 1-1, ¶ 13.)

18   Answer:        AirFX is without sufficient information to admit or deny the allegations in this

19   paragraph, and therefore denies the same.

20       19.        Lurie's bid to purchase the <airfx.com> domain name was successful, and it was

21   transferred into his control on February 2, 2007.

22   Answer:        AirFX is without sufficient information to affirm or deny this allegation, and

23   therefore denies the same.

1        20.      Since that date, Lurie has continuously maintained his ownership of the

2    <airfx.com> domain name, which is currently held through its sponsoring registrar, GoDaddy.

3    (*See* Doc. No. 1-10.)

4    Answer:       AirFX is without sufficient information to admit or deny the allegations in this

5    paragraph, and therefore denies the same.

6        21.      Since 2007, Plaintiffs have maintained their desire to utilize the name "AIRFX"

7    in association with his wind tunnel business venture, and presently continue to work toward this

8    goal. (Doc. No. 1-1, ¶ 15-16.)

9    Answer:       AirFX is without sufficient information to admit or deny the allegations in this

10    paragraph, and therefore denies the same.

11        22.      Plaintiffs have actively used the "AIRFX" name while seeking potential

12    purchasers of their newly designed wind tunnel, which will bear that brand, and Lurie has

13    provided marketing materials to both potential purchasers and potential investors.

14    Answer:       AirFX is without sufficient information to admit or deny the allegations in this

15    paragraph, and therefore denies the same.

16        23.      In preparation for establishing his own wind tunnel business under the name

17    "AIRFX," Lurie has gone about divesting himself of his ownership interests in other wind tunnel

18    companies, such as his SkyVenture holdings.

19    Answer:       AirFX is without sufficient information to admit or deny the allegations in this

20    paragraph, and therefore denies the same.

21        24.      Mr. Lurie has also identified and consulted with the leading aerodynamicist in the

22    field and identified a manufacturing partner. Further, Mr. Lurie has begun preliminary

23    evangelical sales efforts. The leading candidate to be the first customer is Buzz Fink, the

1    owner/operator of one of the largest skydiving facilities in the United States. The total project

2    cost will eventually reach millions of dollars and involve several years of effort – none of which

3    can be rushed or completed on an artificial timeline. (Doc. No. 1-1, ¶ 18-19.)

4    Answer:        AirFX is without sufficient information to admit or deny the allegations in this

5    paragraph, and therefore denies the same.

6            25.     Importantly, Plaintiffs' business is not an online retailer or service provider.

7    Plaintiff has also not announced its business publically, and intends to do so when, and in

8    conjunction with, the launch of its first completed facility. Announcing a new business in

9    connection with a tangible success in the marketplace is a common "launch strategy" in public

10   relations. As such, the business had and has no need of a website until this preliminary work is

11   complete. (Doc. No. 1-1, ¶ 20.) In fact, a prematurely launched website could prove detrimental

12   to the Plaintiffs' marketing strategy.

13   Answer:        AirFX is without sufficient information to affirm or deny this allegation, and

14   therefore denies the same.

15           26.     In the meantime, Plaintiffs have maintained ownership of <airfx.com>, which

16   incorporates the chosen "AIRFX" name, in anticipation of publicly launching their own brand of

17   wind tunnels and a corresponding website to market them. The Plaintiffs have also engaged in

18   extensive analogous use of the mark, AIRFX, during this time.

19   Answer:        AirFX is without sufficient information to admit or deny the allegations in this

20   paragraph, and therefore denies the same.

21           27.     Defendant is owner of a trademark registration for "AIRFX" for use in association

22   with "motorcycles, vehicle parts, namely, shock absorbers, and suspension systems for

23   motorcycles, bicycles, automobiles, and powered vehicles." *See* U.S. Trademark Reg. No.

1    3,214,511.

2    Answer:        Admitted.

3          28.      Despite the fact that the Plaintiffs do not compete with Defendant, and in spite of

4    the fact that Plaintiffs have never utilized the "AIRFX" name in a way that might infringe upon

5    Defendant's registered rights, nearly one year after Lurie acquired the <airfx.com> domain name

6    an individual who identified himself as an employee of Defendant called Lurie, threatening to

7    sue if he did not sell the domain name to Defendant.

8    Answer:        Admitted that an employee of AirFX contacted Lurie to offer a reasonable amount

9    of money to purchase the AirFX.com domain name, and that Lurie instead offered to rent the

10   domain name. As to the remaining allegations, denied.

11         29.      Lurie politely explained to Defendant that <airfx.com> was not for sale.

12   Answer:        Denied.

13         30.      After that initial refusal, Defendant did not call again, and Plaintiffs assumed that

14   the matter was resolved.

15   Answer:        Denied.

16         31.      Then, approximately two years later, Plaintiffs received a letter dated February

17   11, 2010, from another representative of Defendant, Christopher Haigh, Esq., of the firm

18   IPExtract, asserting that Plaintiffs must turn over control of <airfx.com>. A true and correct copy

19   of that letter has been submitted herewith as Exhibit I. (Doc. No. 1-9.)

20   Answer:        Admitted that Exhibit I speaks for itself. As to the other allegations, denied.

21         32.      Upon receipt of Defendant's letter, Lurie contacted Mr. Haigh by phone to again

22   inform him that no infringing use has ever been planned for <airfx.com>. (Doc. No. 1-1, ¶ 34.)

1   Answer:       AirFX is without sufficient information to admit or deny the allegations in this

2   paragraph, and therefore denies the same.

3          33.    Lurie again informed Mr. Haigh that a considerable amount of money had been

4   invested in developing the "AIRFX" brand name and procuring the corresponding domain name

5   registration, that Plaintiffs have not changed their plan to launch a commercial website on

6   <airfx.com>, and that the domain name was not for sale. (Doc. No. 1-1, ¶ 35.) At the conclusion

7   of their telephone conversation, Lurie once again believed that the matter was resolved.

8   Answer:       AirFX is without sufficient information to admit or deny the allegations in this

9   paragraph, and therefore denies the same.

10         34.    However, on April 26, 2011, more than a year later, and more than four years

11  since the domain was first purchased by Lurie, Plaintiffs received notice that Defendant had

12  submitted a domain dispute complaint against Plaintiffs, asserting that Lurie had registered and

13  used <airfx.com> in bad faith. Defendant further alleged as fact that Lurie was in the business of

14  buying and selling domain names professionally. Defendant provided no evidence to support

15  their untruthful statements attacking Lurie's credibility, nor could the Defendant non-

16  perjuriously do so. A true and correct copy of the amended UDRP complaint has been provided

17  herewith as Exhibit B. (Doc. No. 1-2.)

18  Answer:       Admitted that when Lurie was unwilling to sell the airfx.com domain name, was

19  only willing to rent the domain name, and after years of Lurie leaving the airfx.com domain

20  name parked, AirFX brought a UDRP complaint. As for the remaining allegations, denied.

21         35.    Plaintiffs prepared and filed a response to Defendant's amended complaint on

22  May 3, 2011, refuting its allegations of bad faith and accurately setting forth the facts

23  surrounding Lurie's registration and use of <airfx.com>, which use has never interfered with

1   Defendant's rights. A true and correct copy of Plaintiffs' response to Defendant's amended

2   complaint, along with its supporting documents, are submitted herewith as Exhibits C, D, E, F,

3   H, and I. (Doc. Nos. 1-3, 1-4, 1-5, 1-6, 1-7, 1-8, and 1-9.)

4   Answer:        Admitted that Exhibits C, D, E, F, H, and I purport to be copies of the documents

5   filed by Plaintiff. Otherwise, denied.

6          36.     Despite Defendant's failure to show that Plaintiffs had engaged in bad faith

7   registration or use of <airfx.com>, a single-member panel erroneously decided in favor of the

8   UDRP Complainant (i.e., Defendant) on May 16, 2011, and ordered that <airfx.com> be

9   transferred away from Plaintiffs.

10  Answer:        Admitted that the panel decided in favor of AirFX and ordered transfer.

11  Otherwise, denied.

12         37.     The <airfx.com> domain name is now pending transfer to Defendant, as the result

13  of this erroneous domain dispute decision from the National Arbitration Forum.

14  Answer:        Admitted that the transfer was ordered. Otherwise, denied.

15         38.     The Court is not bound by this decision whatsoever.

16  Answer:        Admitted that this is Plaintiffs' legal position. Otherwise, denied.

17         39.     According to its domain name dispute procedure, GoDaddy has delayed

18  transferring <airfx.com> to the Defendant until after ten business days have passed from the

19  arbitration decision, providing Plaintiffs an opportunity to file this action and contest the panel's

20  finding.

21  Answer:        AirFX is without sufficient information to admit or deny the allegations in this

22  paragraph, and therefore denies the same.

1     40.     Although the <airfx.com> domain name has not yet been transferred away from

2   Plaintiffs, the instant action is ripe for review by this Court, because such transfer is inevitable

3   absent further action by Plaintiff.

4   Answer:     AirFX is without sufficient information to admit or deny the allegations in this

5   paragraph, and therefore denies the same.

6     41.     Plaintiff asserts that <airfx.com> should not be transferred to the Defendant.

7   Answer:     Admitted that this is Plaintiffs' assertion.

8     42.     Plaintiff hereby re-alleges and incorporates by reference the allegations in the

9   preceding paragraphs as if fully set forth herein.

10  Answer:     The answers above are reasserted herein.

11    43.     Through passage of the Anticybersquatting Consumer Protection Act (the

12  "ACPA"), Congress amended 15 U.S.C. § 1114 to establish a right of relief against an

13  overreaching trademark owner seeking to take ownership of domain names that have not been

14  registered or used in violation of the trademark owner's rights. This practice is colloquially

15  called "reverse domain name hijacking."

16  Answer:     Admitted that Congress passed the ACPA. Denied that AirFX is an "overreaching

17  trademark owner." AirFX is without sufficient information to admit or deny the remaining

18  allegations in this paragraph, and therefore denies the same.

19    44.     The Internet Corporation for Assigned Names and Numbers ("ICANN"), the

20  organization responsible for promulgating the UDRP, defines reverse domain name hijacking as

21  "using the Policy in bad faith to attempt to deprive a registered domain-name holder of a domain

22  name."

1   Answer:        AirFX is without sufficient information to admit or deny the allegations in this

2   paragraph, and therefore denies the same.

3          45.     Section 1114 states, in pertinent part, that:

4          [a] domain name registrant whose domain name has been suspended, disabled, or
5          transferred under [the UDRP] may, upon notice to the mark owner, file a civil
6          action to establish that the registration or use of the domain name by such
7          registrant is not unlawful under this chapter. The court may grant injunctive relief
8          to the domain name registrant, including the reactivation of the domain name or
9          transfer of the domain name to the domain name registrant.

10         15 U.S.C. § 1114(2)(D)(v).

11

12         46.     To prevail on a reverse hijacking claim, Plaintiffs must show that: (i) Lurie is the

13  domain name registrant for the <airfx.com> domain name (the "Hijacked Domain Name"); (ii)

14  the Hijacked Domain Name was suspended, disabled, or transferred under GoDaddy's domain

15  dispute resolution policy; (iii) the UDRP Complainant has notice of this action by service or

16  otherwise; and (iv) Plaintiffs' registration or use of the Hijacked Domain Name is not unlawful

17  under the ACPA.

18  Answer:        AirFX is without sufficient information to admit or deny the allegations in this

19  paragraph, and therefore denies the same.

20         47.     Plaintiffs can demonstrate each of the four requirements to prevail in this reverse

21  hijacking claim.

22  Answer:        Denied.

23         48.     Plaintiff Lurie is the current owner of the Hijacked Domain Name.

24  Answer:        AirFX is without sufficient information to admit or deny the allegations in this

25  paragraph, and therefore denies the same.

1    49.    Plaintiff Lurie has been the registrant of the Hijacked Domain Name continuously

2    since February 2, 2007. (Doc. 1-1, ¶ 14.) His email address and the contact information for Ms.

3    Elliot are listed in the current WHOIS record for the domain name. (*See* Doc. No. 1-10.)

4    Answer:    AirFX is without sufficient information to admit or deny the allegations in this

5    paragraph, and therefore denies the same.

6    50.    On April 26, 2011, the UDRP Complainant (i.e., Defendant) submitted a domain

7    name dispute complaint to a qualified arbitrator, in accordance with GoDaddy's domain name

8    dispute resolution policy.

9    Answer:    Admitted.

10    51.    Despite the fact that the UDRP Complainant / Defendant failed to show that

11    Plaintiffs had registered or used the Hijacked Domain Name in bad faith, a single-member panel

12    decided that <airfx.com> should be transferred away from Plaintiffs.

13    Answer:    Admitted that the UDRP panel found in favor of AirFX. Otherwise, denied.

14    52.    The Hijacked Domain Name is subject to imminent transfer as a result of the

15    improper UDRP decision.

16    Answer:    Admitted that the UDRP panel ordered transfer. Otherwise, denied.

17    53.    Contemporaneous with the filing of this Complaint and its Exhibits with the

18    Court, Plaintiffs' attorney has provided notice of the same by email upon the UDRP

19    Complainant, its attorney, and the sponsoring registrar for the Hijacked Domain Name,

20    GoDaddy.

21    Answer:    Admitted as to notice on Complainant.

22    54.    This Complaint, its exhibits, and a properly issued Summons, shall be served

23    upon Defendant in due course.

14

1    Answer:        AirFX is without sufficient information to admit or deny the allegations in this

2    paragraph, and therefore denies the same.

3           55.     Plaintiffs have neither registered nor used the Hijacked Domain Name in bad

4    faith.

5    Answer:        Denied.

6           56.     Congress has provided a number of guidelines for determining whether a party

7    has registered, used, or trafficked in a domain name with bad faith. See 15 U.S.C. §

8    1125(d)(1)(B)(i). More specifically, "[i]n determining whether [Plaintiffs have] a bad-faith intent

9    [sufficient to justify forfeiture of the domain name in question], a court may consider factors

10   such as, but not limited to:

11        I. the trademark or other intellectual property rights of [Plaintiffs], if any, in the
12        [Hijacked Domain Name];
13        II. the extent to which the [Hijacked Domain Name] consists of the legal name of
14        [Plaintiffs] or a name that is otherwise commonly used to identify [Plaintiffs];
15        III. [Plaintiffs'] prior use, if any, of the [Hijacked Domain Name] in connection
16        with the bona fide offering of any goods or services;
17        IV. [Plaintiffs'] bona fide noncommercial or fair use of ["AIRFX"] in a site
18        accessible under the [Hijacked Domain Name];
19        V. [Plaintiffs'] intent to divert consumers from the [UDRP Complainant]'s online
20        location to a site accessible under the [Hijacked Domain Name] that could harm
21        the goodwill represented by ["AIRFX"], either for commercial gain or with the
22        intent to tarnish or disparage ["AIRFX"], by creating a likelihood of confusion as
23        to the source, sponsorship, affiliation, or endorsement of the site;
24        VI. [Plaintiffs'] offer to transfer, sell, or otherwise assign the [Hijacked Domain
25        Name] to the [UDRP Complainant] or any third party for financial gain without
26        having used, or having an intent to use, the [Hijacked Domain Name] in the bona
27        fide offering of any goods or services, or [Plaintiffs'] prior conduct indicating a
28        pattern of such conduct;
29        VII. [Plaintiffs'] provision of material and misleading false contact information
30        when applying for the registration of the [Hijacked Domain Name], [Plaintiffs']
31        intentional failure to maintain accurate contact information, or [Plaintiffs'] prior
32        conduct indicating a pattern of such conduct;
33        VIII. [Plaintiffs'] registration or acquisition of multiple domain names which
34        [Plaintiffs know] are identical or confusingly similar to marks of others that are
35        distinctive at the time of registration of such domain names, or dilutive of famous
36        marks of others that are famous at the time of registration of such domain names,

1    without regard to the goods or services of the parties; and

2    IX. the extent to which [the UDRP Complainant's mark] incorporated In

3    [Plaintiffs'] domain name registration is or is not distinctive and famous within

4    the meaning of subsection (c)(1) of [this section]." 15 U.S.C. § 1125(d)(1)(B)(i).

5    Answer:        Admitted that the cited paragraphs appear to be edited and redacted portions of 15

6    U.S.C. § 1125. Otherwise, denied.

7

8            57.      Addressing these factors, (I.) Plaintiffs have made extensive use of the "AIRFX"

9    mark, which use is analogous to use in commerce; (II.) the Hijacked Domain Name consists of

10   the brand name chosen by Plaintiffs for their wind tunnel business; (III.) Plaintiffs' use of the

11   <airfx.com> domain name has been passive, but only in preparation for Lurie's intended, future

12   bona fide use; (IV.) no use has ever been made of Defendant's mark, since Plaintiffs are engaged

13   in a wholly unrelated class of goods and services; (V.) the disputed domain is parked, and

14   Defendant, in its original UDRP complaint, admited that Plaintiffs do not seek to divert

15   customers of Defendant; (VI.) Plaintiffs have never offered to sell or otherwise assign the

16   <airfx.com> domain name; Plaintiffs have clearly demonstrated their intent to use the

17   <airfx.com> domain name in connection with a bona fide offering of goods and services; (VII.)

18   Plaintiffs can be reached through use of the contact information provided in the WHOIS record

19   for the <airfx.com> domain name; Plaintiffs have never had any intent to hide Lurie's ownership

20   of the <airfx.com> domain name; (VIII.) Plaintiffs have never registered any domains which

21   they know to be violative of any parties' trademark rights; and (IX.) Defendant's mark is not

22   famous, and is only demonstrably distinctive in relation to its current use – i.e., in relation to

23   motorcycles, vehicle parts, namely, shock absorbers, and suspension systems for motorcycles,

24   bicycles, automobiles, and powered vehicles; Defendant's mark most certainly lacked any

1   distinctiveness or notoriety of any kind when the Plaintiffs registered <airfx.com>.

2   Answer:          Denied.

3           58.      In short, Plaintiffs neither registered, trafficked in, nor used the Hijacked Domain

4   Name in any way that violates the ACPA. Although both parties have rights in the underlying

5   mark, Defendant seeks to use its subsequent federal trademark registration to hijack the prior

6   purchase of <airfx.com> by Plaintiffs – who have superior rights to those held by Defendant.

7   Answer:          Denied.

8           59.      Plaintiffs' registration and use of <airfx.com> are not unlawful under the ACPA,

9   and therefore the Plaintiffs have every right to possess and maintain this valuable business asset.

10   Answer:          Denied.

11          60.      On May 16, 2011, a single-member arbitration panel erroneously decided that

12   Plaintiffs' registration and use of the <airfx.com> domain name were in bad faith, and ordered

13   transfer of <airfx.com> to the UDRP Complainant / Defendant.

14   Answer:          Admitted that the panel ordered transfer. Otherwise, denied.

15          61.      This arbitration decision is due no deference in this Court. Moreover, in deciding

16   Plaintiffs' claims, this Court should perform a de novo review of the allegations herein

17   presented.

18   Answer:          Admitted that this is Plaintiffs' legal position. Otherwise, denied.

19          62.      Despite its knowledge to the contrary, Defendant presented in its UDRP

20   complaint the unsupported assertion that Plaintiffs have no legitimate interest in the <airfx.com>

21   domain name. On the contrary, Plaintiffs' verifiable activities to date not only demonstrate their

22   legitimate interest in the Hijacked Domain Name, but they prove by clear and convincing

23   evidence that Plaintiffs have no intention of using the Hijacked Domain Name for an improper

1    purpose.

2    Answer:        Denied.

3           63.     Despite its knowledge to the contrary, Defendant presented in its UDRP

4    complaint the unsupported assertion that Plaintiffs registered the domain name <airfx.com> with

5    the intent to ransom it for financial gain.

6    Answer:        Denied.

7           64.     Despite its knowledge to the contrary, Defendant presented in its UDRP

8    complaint the unsupported allegation that Plaintiff Lurie is "in the business of securing domain

9    names for marks, including issuing trademarks, that he knows are valuable to other corporations,

10   with the sole purpose of seeking to derive income from the rental of those domains." (Doc. No.

11   1-2, § 7(c)(iii).)

12   Answer:        Denied.

13          65.     These assertions are patently false.

14   Answer:        AirFX is without sufficient information to admit or deny the allegations in this

15   paragraph, and therefore denies the same.

16          66.     Defendant knew that these assertions were patently false when Defendant

17   submitted them to the UDRP panel. However, Defendant desired to possess <airfx.com> for its

18   own purposes, and its desire to possess the domain name despite the Plaintiffs' legitimate right to

19   own it, motivated Defendant to knowingly and willfully submit false statements to the UDRP

20   panel.

21   Answer:        Denied.

1    67.    The panel relied upon these statements in issuing its erroneous decision.

2    Answer:    AirFX is without sufficient information to admit or deny the allegations in this

3    paragraph, and therefore denies the same.

4    68.    The UDRP Complainant / Defendant improperly and unethically introduced

5    evidence of an offer to compromise the disputed claim in its UDRP complaint. Under Federal

6    Rule of Evidence 408, the trier of fact in this action should not consider the terms of this offer to

7    compromise; however, since they are part and parcel of the UDRP complaint, this Court must be

8    informed of the terms of this offer of compromise.

9    Answer:    AirFX denies that there were any communications between the parties that would

10   be covered by Federal Rule of Evidence 408.

11   69.    After receiving Defendant's initial threatening calls in or around early 2008, Lurie

12   discussed with Defendant the possibility of licensing or leasing the <airfx.com> domain name to

13   Defendant, but only until such time as Plaintiffs were prepared to launch their own website, at

14   which point Plaintiffs intended to use <airfx.com> to market their own, noncompeting products

15   and services. No license or lease agreement was reached between Plaintiffs and Defendant.

16   Answer:    Admitted that Lurie offered to rent and/or lease airfx.com on a short-term,

17   monthly basis, for an unreasonable amount of AirFX's profits – all in violation of 15 U.S.C.

18   1125. Otherwise, denied.

19   70.    Defendant improperly and unethically provided this offer of compromise to the

20   panel, twisting Plaintiff Lurie's willingness to provide a reasonable accommodation and

21   presenting it as evidence of "bad faith." Even if it were properly submitted to the UDRP panel,

22   which it was not, the offer demonstrates Plaintiffs' good faith, if anything, in being willing to

23   permit Defendant to use the domain name during Plaintiffs research, development, and capital

1    raising period.

2    Answer:    Denied.

3    71.    This Court is not bound by the decision of the single-member arbitration panel.

4    Answer:    AirFX repeats, for the third time, that it admits that this is Plaintiffs' position.

5    Otherwise, denied.

6    72.    Plaintiff did not register <airfx.com> in bad faith.

7    Answer:    AirFX is without sufficient information to admit or deny the allegations in this

8    paragraph, and therefore denies the same.

9    73.    Plaintiff has never used <airfx.com> in bad faith.

10    Answer:    Denied.

11    74.    Plaintiff has never trafficked in <airfx.com>, nor in any other domain name.

12    Answer:    AirFX is without sufficient information to admit or deny the allegations in this

13    paragraph, and therefore denies the same.

14    75.    The UDRP Complainant / Defendant has overreached its trademark rights and

15    wrongfully asserted a claim to the Hijacked Domain Name.

16    Answer:    Denied.

17    76.    The events described herein constitute reverse domain name hijacking and

18    warrant injunctive relief for Plaintiffs under 15 U.S.C. § 1114(2)(D)(v).

19    Answer:    Denied.

20    77.    Plaintiffs are entitled to injunctive relief, preventing the UDRP Complainant's

21    reverse hijacking of the <airfx.com> domain name.

22    Answer:    Denied.

1

**AFFIRMATIVE DEFENSES**

2

**First Affirmative Defense:**        For further answer and as an affirmative defense,

3

AirFX states that Plaintiffs' Complaint fails to state a claim upon which relief may be granted.

4

**Second Affirmative Defense:**        For further answer and as an affirmative defense,

5

AirFX states that Plaintiffs' Complaint fails due to unclean hands.

6

**Third Affirmative Defense:**        For further answer and as an affirmative defense,

7

AirFX states that Plaintiffs' complaint fails because its request for damages is barred by its

8

failure to mitigate damages.

9

**COUNTERCLAIMS**

10

Defendant AirFX counterclaims against Plaintiffs and Counter-Defendant as follows:

11

**The Parties**

12

1.        AirFX is an Indiana corporation located at 5142 E. 65th Street, Indianapolis, IN

13

46220.

14

2.        On information and belief, Plaintiff Lurie maintains an address at 3527 Mt.

15

Diablo Blvd. #298, Lafayette, CA 94549.

16

3.        On information and belief, Pedal Logic, LP is a limited partnership organized on

17

May 11, 2011 and existing under the laws of California.

18

4.        On information and belief, Juno Holdings, Inc. is a corporation formed on April

19

29, 2008 and existing under the laws of California.

20

5.        On information and belief, Pedal Logic, LP is located and doing business at 3527

21

Mt. Diablo Blvd. #298, Lafayette, CA 94549.

22

6.        On information and belief, Juno Holdings, Inc. is located and doing business at

23

3527 Mt. Diablo Blvd. #298, Lafayette, CA 94549.

21

1       7.     On information and belief, Lurie is the registered agent for both Juno Holdings,

2   Inc. and Pedal Logic, LP (hereafter collectively referred to as "Counterdefendants").

3       8.     On information and belief, Lurie is the Founder and CEO and/or managing

4   member of each of Juno Holdings, Inc. and of Pedal Logic, LP.

5                   **Background of AirFX**

6       9.     AirFX is led and owned by Jeff Schwindt ("Schwindt"), a seasoned entrepreneur

7   and engineer.

8       10.    Schwindt holds a mechanical engineering degree from Northeastern University,

9   and a M.S. in engineering from Clarkson University. Schwindt is also an avid motorcyclist.

10       11.    In 1993, Schwindt founded Air Systems Engineering, Inc., where he developed

11   pneumatic and electrical control systems and built industrial automation systems.

12       12.    Schwindt also developed a number of patentable inventions relating to the

13   motorcycle suspension industry, among others, and is currently a named inventor on over 15

14   patent applications and issued patents.

15       13.    After years of development, on June 8, 2005, Schwindt launched his latest

16   development: a novel air suspension system for motorcycles.

17       14.    Schwindt developed the name "AirFX" for the product, in part because the

18   product was capable of adjusting the ride height and ride quality of a motorcycle using only

19   compressed air.

20       15.    From June 8, 2005 to the present, Schwindt and his companies spent tremendous

21   resources marketing and selling the AirFX products. At no time did Schwindt ever use a different

22   name for the product.

1      16.      On June 10, 2005, just two days after launching the AirFX product, Schwindt

2   filed U.S. Patent Application No. 60/689,454 related to the novel air suspension system.

3      17.      The technology included in U.S. Patent Application No. 60/689,454 has now

4   resulted in two U.S. Patents, and several related patent applications are still pending and being

5   pursued.

6      18.      On June 25, 2005, less than a month after launching the AirFX product, Schwindt

7   applied for the AirFX trademark, now U.S. Trademark Registration No. 3,214,511.

8      19.      On September 5, 2006, the AirFX mark published for opposition. No one opposed

9   the mark.

10     20.      Between June of 2005 and the present, thousands of AirFX products have been

11   sold.

12     21.      As the AirFX product began to dominate Air Systems Engineering, Inc.'s

13   business, Schwindt chose to spin the product off under a corporation named AirFX, LLC.

14     22.      In 2008, AirFX, LLC was formed.

15     23.      AirFX, LLC eventually purchased the assets of Air Systems Engineering, Inc.

16     24.      Schwindt also formed AirFX Technologies, LLC to develop and market

17   pneumatic industrial automation systems.

18     25.      AirFX, LLC currently markets the AirFX product through dealers nationwide, as

19   well as through several industry magazines and websites, including www.airfxairride.com.

20                          **Background of Lurie**

21     26.      In 2006 - 2007, Lurie claims to have found an interest in the names AirXTREME

22   and AirFX for his sky diving venture.

1        27.     On June 26, 2006, Lurie, a self-proclaimed intellectual property attorney, filed his

2    own intent-to-use trademark application for the mark AirXTREME[1].

3        28.     On or about the same time, Lurie purchased the domain name AirXTREME.com.

4        29.     On May 8, 2007, the US Patent and Trademark Office mailed a Notice of

5    Allowance to Lurie, indicating that AirXTREME was authorized to become a Registered

6    Trademark[2].

7        30.     At the time of Allowance, in order to obtain registration, Lurie needed to provide

8    a Statement of Use, affirming under oath, that Lurie was actually using the mark in commerce.

9        31.     Such a Statement of Use could have been substantiated by a letterhead, an

10   invoice, an advertisement, or any type of product packaging that demonstrated the mark

11   AirXTREME being used in commerce.

12       32.     Lurie never provided a Statement of Use to the USPTO.[3]

13       33.     On information and belief, Lurie never once used the word AirXTREME in

14   commerce.

15       34.     On December 19, 2007, Lurie's application for AirXTREME abandoned, due to

16   failure to file a Statement of Use.[4]

17       35.     On information and belief, Lurie never found a single customer for his wind

18   tunnel business.

19       36.     During the same timeframe that Lurie pursued registration of the mark

20   AirXTREME, Lurie claims to have been interested in the mark AirFX.[5]

---

[1] The history and current status of the federal trademark application can be viewed online here:
http://tarr.uspto.gov/servlet/tarr?regser=serial&entry=78916256
[2] Id.
[3] Id.
[4] Id.
[5] See Lurie Complaint at 15 and related Exhibit D (Document 1-4).

1        37.     Suspiciously, Lurie fails to admit in his Complaint that he performed a trademark

2   search for AirFX –which would have indicated that Schwindt had filed his own trademark

3   application more than a year prior to Lurie.

4        38.     On information and belief, Lurie performed, or had performed under his direction,

5   a trademark search for the mark AirFX.[6]

6        39.     On information and belief, Lurie found Schwindt's trademark application for the

7   mark AirFX, and knew that Schwindt had filed the application more than a year before Lurie's

8   proclaimed interest.

9        40.     On information and belief, because Lurie found Schwindt's trademark application

10   for the mark AirFX, Lurie chose not to seek trademark protection for AirFX.

11        41.     Despite knowing of the AirFX trademark application, Lurie purchased the

12   airfx.com domain name.

13        42.     Notably, having purchased both the AIRFX.COM and AIRXTREME.com

14   domains, Lurie chose to seek trademark protection for AirXTREME *only* and chose *not* to seek

15   trademark protection for AIRFX.

16        43.     As a self-proclaimed intellectual property attorney, Lurie knew or should have

17   known that Schwindt had rights to the name AirFX.

18        44.     As a self-proclaimed intellectual property attorney, Lurie knew or should have

19   known that Schwindt had rights to the domain name airfx.com.

20        45.     As early as the date he purchased the AirFX domain name, Lurie intended to rent,

21   and not sell for a reasonable price, the airfx.com domain name.

---

[6] Id.

1    46.    As early as the date he purchased the AirFX domain name, Lurie never intended

2    to use airfx.com as an active site.

3    47.    Pedal Logic, LP is the owner of U.S. Trademark Application Serial No.

4    85/359,345 for AirFX, filed on June 29, 2011.[7]According to its website, www.pedallogic.com,

5    Pedal Logic, LP proclaims to develop and license a "learning system that significantly improves

6    the real-world mileage and range of consumer, commercial, and military vehicles."[8]

7    48.    On information and belief, Pedal Logic, LP does not hold itself out as a wind

8    tunnel business, and never has held itself out as a wind tunnel business.

9    49.    On information and belief, Juno Holdings, Inc. does not hold itself out as a wind

10   tunnel business, and never has held itself out as a wind tunnel business.

11   50.    Lurie, Juno holdings, Inc. and/or Pedal Logic, LP chose to file the AirFX

12   application only after learning about Schwindt's favorable UDRP decision.

13                    **Count I: Trademark Infringement**

14   51.    The allegations of the preceding paragraphs of the Counterclaims are repeated and

15   re-alleged as though fully set forth herein.

16   52.    This Court has jurisdiction over the subject matter of this action pursuant to 15

17   U.S.C. § 1125 et al.

18   53.    AirFX is the owner of U.S. Trademark Registration No. 3,214,511, for AirFX, as

19   it relates to "motorcycles, vehicle parts, namely, shock absorbers, and suspension systems for

20   motorcycles, bicycles, automobiles, and powered vehicles."

21   54.    AirFX.com incorporates a mark that is identical to AirFX's U.S. Trademark

22   Registration No. 3,214,511.

---

[7] The history and current status of the federal trademark application can be viewed online here:
http://tarr.uspto.gov/servlet/tarr?regser=serial&entry=85359345
[8] See also the Goods and services listing for the PEDAL LOGIC trademark application. Id.

1          55.     Plaintiffs and/or Pedal Logic, LP profess to be marketing and/or developing an

2  AirFX product.

3          56.     Pedal Logic, LP professes to develop and implement "in-vehicle technologies."

4          57.     Pedal Logic, LP is developing and/or plans to develop and market an AirFX

5  product that is related to vehicle technologies.

6          58.     Plaintiffs' and Pedal Logic, LP's use of the AIRFX mark is confusingly similar to

7  AirFX's mark in sound, appearance and commercial impression.

8          59.     Such use unlawfully exploits the commercial value AirFX has developed in the

9  AIRFX mark, and is likely cause confusion, or to cause mistake, or to deceive as to its affiliation

10  or association with AirFX as to the origin, sponsorship and approval of Plaintiffs' and/or Pedal

11  Logic, LP's products and as to the approval of such product by AirFX.

12          60.     The goods of Pedal Logic, LP appear to be closely related to the goods of AirFX,

13  given that Pedal Logic, LP is developing technologies for a vehicle.

14          61.     AirFX is the senior user of the parties' marks as they relate to vehicles.

15          62.     Plaintiffs' and Pedal Logic, LP's continued use of the AIRFX mark in connection

16  is likely to cause and is causing AirFX substantial and irreparable injury, depriving AirFX of its

17  right to determine the manner in which the AirFX mark is represented to the general public

18  through merchandising and marketing of motorcycle and vehicle products.

19  **Count II: Cyber Squatting in Violation of the Anticybersquatting Consumer Protection Act**

20          63.     The allegations of the preceding paragraphs of the Counterclaims are repeated and

21  re-alleged as though fully set forth herein.

22          64.     Lurie, the owner of AirFX.com, is not and was not commonly known by the

23  disputed domain name, airfx.com.

1   65.   Lurie used a third-party name when registering the airfx.com website.

2   66.   When Lurie purchased and registered the airfx.com website, he knew that

3   Schwindt and/or Air Systems Engineering, Inc., the predecessor company of AirFX, was the

4   rightful owner of the federal trademark AirFX.

5   67.   When Lurie purchased the airfx.com website, he intended to use the domain name

6   to display various third-party links to unrelated businesses.

7   68.   Lurie has offered to rent, and not sell, the airfx.com domain name to AirFX.

8   69.   Lurie's offer to rent the airfx.com domain name was based on a percentage of

9   profits of AirFX.

10   70.   Lurie registered and is using the domain name airfx.com in bad faith.

11   71.   On information and belief, Lurie is the named registrant of at least 20 domain

12   names.

13   72.   On information and belief, Lurie has been the named registrant of at least 35

14   additional domain names.

15   73.   Lurie is an unnamed owner of numerous other domain names.

16   **Count III: Intentional Interference with Prospective Economic/Contractual Advantage**

17   74.   The allegations of the preceding paragraphs of the Counterclaims are repeated and

18   re-alleged as though fully set forth herein.

19   75.   Lurie, the owner of AirFX.com, has held himself out as an intellectual property

20   attorney.

21   76.   At the time that Lurie made such a statement, he was not a practicing attorney.

22   77.   Sometime during the years 2005-2006, Lurie searched the USPTO records for the

23   mark AirFX.

28

1      78.     During such search, Lurie learned that the registered owner of the mark AirFX

2  was Schwindt and/or a predecessor corporation of AirFX.

3      79.     Despite this knowledge, Lurie purchased the domain name airfx.com.

4      80.     When Lurie purchased airfx.com, Lurie had no immediate plans to use airfx.com

5  to market wind tunnels.

6      81.     Lurie has never used airfx.com to market wind tunnels.

7      82.     Lurie has never used the mark AirFX in commerce to advertise wind tunnels.

8      83.     When Lurie filed this Complaint, he had no intention of using the mark AirFX to

9  market wind tunnels.

10      84.     When responding to AirFX's UDRP Complaint, Lurie had no immediate plans of

11  using the mark AirFX to market wind tunnels.

12      85.     When responding to AirFX's UDRP Complaint, Lurie had no intention of using

13  the mark AirFX to market wind tunnels.

14      86.     As of the filing of this Complaint, Lurie had no intention of using the mark AirFX

15  to market wind tunnels.

16      87.     As of the filing of this Complaint, Lurie was aware that AirFX was the senior user

17  of the AirFX mark.

18      88.     AirFX has a business interest in obtaining trademarks for its products.

19      89.     AirFX has a business interest in obtaining websites for marketing its products.

20      90.     Pedal Logic, LP and Juno Holdings, Inc. filed an application for the mark AirFX

21  with no intention of using the mark in its business.

22      91.     Plaintiffs, Pedal Logic, LP and Juno Holdings, Inc. have interfered with the

23  business interest and right that AirFX has in obtaining the AirFX domain name.

1     92.    Plaintiffs and Pedal Logic, LP interference was malicious and wrongful.

2     93.    Plaintiffs' interference was neither justified, privileged, nor excusable.

3     94.    AirFX has suffered damages as a proximate result of Plaintiffs' and Pedal Logic,

4     LP's actions.

5     **Count III: Abuse of Process**

6     95.    The allegations of the preceding paragraphs of the Counterclaims are repeated and

7     re-alleged as though fully set forth herein.

8     96.    Plaintiff has brought this action with the ulterior purpose of causing AirFX to

9     expend tremendous resources on litigation that Plaintiff knows was not meritorious.

10     97.    Plaintiffs' ulterior purpose was to cause AirFX to give up its right to the AirFX

11     domain name, despite AirFX's senior use of the mark and Plaintiffs' failure to use the website

12     for any legitimate business.

13     98.    Plaintiff's and ulterior purpose was not proper.

14     99.    Pedal Logic, LP filed an application for the mark AirFX with no intention of

15     using the mark in its business.

16     100.    Plaintiffs' and Pedal Logic, LP had ulterior purposes in bringing this Complaint

17     and in filing a trademark application for AirFX.

18     101.    Plaintiffs and Pedal Logic, LP have abused the trademark registration process and

19     the litigation process in an effort to damage AirFX.

20     102.    AirFX has suffered damages as a proximate result of Plaintiffs', Pedal Logic,

21     LP's, and Juno Holdings, Inc.'s, actions.

22     **PRAYER FOR RELIEF**

23     WHEREFORE, AirFX respectfully requests that this Court:

1.      Enter judgment in favor of AirFX and against Plaintiffs and Pedal Logic, LP on the Counterclaims;

2.      Permanently enjoin and restrain Plaintiffs and Pedal Logic, LP, and their officers, agents, employees and all other persons in active concert or participation with Plaintiff and Pedal Logic, LP from:

a.      Use of the AIRFX mark, and any phonetic equivalent thereof;

b.      Engaging in any other conduct that will cause, or is likely to cause, confusion, mistake or misunderstanding as to the affiliation, connection, association, origin, sponsorship or approval of its products with AirFX, AirFX's goods or its AIRFX mark;

3.      Declare that Lurie is a cybersquatter under the Anticybersquatting Consumer Protection Act.

4.      Declare that U.S. Trademark Application No. 85/359,345 to Pedal Logic, LP and Juno Holdings, Inc., as well as any other marks determined to be similarly situated, be cancelled due to false statements made to the U.S. Patent and Trademark Office;

5.      Order the immediate transfer of the airfx.com domain name to AirFX; and

6.      For all costs expended by AirFX in this action and in the UDRP Complaint.


Dated:   __11/3/11__

Respectfully submitted,


/David Oskin/_____
David Oskin
150 N. Michigan Ave., Ste. 2800
Office: 312.890.2527
Fax: 312.277.9002
david@caliberip.com

1
2                            **<u>CERTIFICATE OF SERVICE</u>**

3
4          This is to certify that a copy of the foregoing has been sent by priority mail on  11/3/11
5   and served upon the following counsel of record:
6
7   Marc J. Randazza
8   Randazza Legal Group
9   2 South Biscayne Blvd., Suite 2600
10  Miami, Florida 33131
11
12
13                                      /David Oskin/_____
14                                      David Oskin
15                                      Caliber IP, LLC
16                                      150 N. Michigan Ave., Ste 2800
17                                      Office: 312.890.2527
18                                      Fax: 312.277.9002
19                                      david@caliberip.com
20

21

22