**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AIRFX.com; Marc Lurie, | CV 11-01064-PHX-FJM |
| Plaintiffs, | **ORDER** |
| vs. | |
| AirFX LLC; | |
| Defendant/Counterclaimant, | |
| vs. | |
| AIRFX.com; Marc Lurie, | |
| Counterdefendants. | |

The court has before it plaintiffs' motion for summary judgment ("MSJ") (doc. 87) and separate statement of facts ("PSOF1") (doc. 87-1), defendant's response (doc. 95) and separate statement of facts ("DSOF1") (doc. 95-1), and plaintiffs' reply (doc. 100). We also have before us defendant's MSJ (doc. 92) and separate statement of facts ("DSOF2") (doc. 92-1), plaintiffs' response (doc. 101) and separate statement of facts ("PSOF2") (doc. 101-1), and defendant's reply (doc. 102).[1] Finally, we have before us defendant's motion to seal (doc.

---

[1] Both defendant's MSJ and its response to plaintiffs' MSJ exceed the seventeen-page limit for motions and responses. See LRCiv 7.2(e)(1).

93) and plaintiffs' response (doc. 97). Defendant did not reply, and the time for replying has expired.

**I**

On a motion for summary judgment we accept undisputed facts as true and draw all reasonable inferences in the non-moving party's favor. See Stegall v. Citadel Broad. Co., 350 F.3d 1061, 1065 (9th Cir. 2003). Under Rule 56(c)(1), Fed. R. Civ. P., a party disputing a fact "must support the assertion" by "citing to particular parts of materials in the record, including depositions, documents,. . . affidavits or declarations," or by "showing that the materials cited do not establish the absence. . . of a genuine dispute." Defendant disputes a number of facts cited in support of plaintiffs' MSJ, but often does not offer any controverting evidence, arguing only that discovery has closed and plaintiffs did not provide documents to support their assertions. See, e.g., DSOF1 ¶¶ 3-5. Defendant also denies a number of facts, claiming that plaintiffs did not submit documents to support their allegations. DSOF1 ¶¶ 6-8. But these assertions are supported by plaintiffs' references to declarations, depositions, and in some cases documentary evidence. See PSOF1 ¶¶ 3-8. If defendant asked for documents during discovery and received an inadequate response, the proper mechanism for relief was to file a timely motion to compel. Defendant's failure to do so does not relieve its burden to properly support its assertions of factual disputes. Accordingly, where defendant has failed to properly support an assertion of fact, we may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

Moreover, some of plaintiffs' facts disputed by defendant are facts that <u>defendant itself</u> asserted were undisputed in support of its MSJ. For example, defendant disputes (without offering controverting evidence) that Lurie has never sold a product or service with the AIRFX name, DSOF1 ¶ 17, but asserts in its own statement of facts that "[p]laintiffs have never sold a single product bearing the name AirFX." DSOF2 ¶ 4. Similarly, defendant disputes (without offering controverting evidence) that plaintiffs have not advertised AIRFX products, DSOF1 ¶¶ 18, 20, but lists this as an undisputed fact in support of its own MSJ. DSOF2 ¶ 5. Defendant cannot have it both ways. These facts are also considered undisputed

for the purposes of these motions.

**II**

This dispute centers around the internet domain name www.airfx.com. Non-party Bestinfo registered airfx.com as a domain name on March 21, 2003. Air Systems Engineering, Inc. ("ASE") filed a trademark application for AirFX in June 2005, alleging June 8, 2005 as the date of its first use in commerce. Defendant was formed on January 29, 2008 as a subsidiary of ASE. ASE assigned its AirFX trademark registration to defendant on April 22, 2011. Defendant uses the AirFX trademark in connection with shock absorbers and suspension systems for motorcycles, bicycles, automobiles, and powered vehicles. Defendant does not install, design, or manufacture wind tunnels.

Plaintiff Marc Lurie was involved in operating skydiving wind tunnel businesses under the name "SkyVenture." In 2006, Lurie instructed a SkyVenture employee, Jillian Elliot, to develop a new brand name for his wind tunnel business. Lurie conducted a trademark search in June 2006, which revealed ASE's trademark application for AirFX. Lurie decided to use the brand "AIRFX" in connection with a new line of wind tunnels. He instructed Elliot to offer to purchase airfx.com from Bestinfo. Bestinfo accepted, and airfx.com was transferred to Elliot on February 2, 2007 for $2,100. Lurie has not posted any content at the www.airfx.com domain name, and has not created a website for airfx.com. The domain name is currently parked at a "splash page"[2] provided by the domain name registrar, GoDaddy. The splash page includes third-party advertisements. Plaintiffs assert that Lurie does not derive any revenue from the advertisements placed by GoDaddy on the splash page. PSOF1 ¶ 22. Although defendant disputes this fact, it does not offer any controverting evidence. Instead, it states that despite repeated discovery requests, plaintiff has "failed to provide any documentation regarding the terms of its agreement with GoDaddy.com." DSOF1 ¶ 22. As already discussed above, defendant did not file a motion

---

[2] A "splash page" is the first page that appears when a website is visited. Chambers v. Time Warner, 2003 WL 749422, at *7 (S.D.N.Y. Mar. 5, 2003).

- 3 -

to compel on this matter. Moreover, it has not shown by affidavit or declaration that it cannot justify its opposition pursuant to Rule 56(d), Fed. R. Civ. P. Thus, we consider this fact undisputed. See Fed. R. Civ. P. 56(e)(2).

Lurie was bound by a non-compete agreement after leaving SkyVenture, which prohibited him from developing his own line of wind tunnels until 2010. Plaintiffs have researched potential wind tunnel designs. To date, plaintiffs have never sold a product bearing the brand AIRFX. They have no advertising, marketing, or manufacturing activities. They have never sold or offered to sell suspension systems for motorcycles, or any other motorcycle-related products.

Defendant contacted Lurie in 2008 regarding the purchase of airfx.com. Lurie offered to lease the domain name to defendant for one year. The parties dispute the terms of the offer. Defendant declined. In 2011, defendant filed a domain dispute complaint before the National Arbitration Forum. On May 16, 2011, the panel decided in favor of defendant, ordering that GoDaddy transfer airfx.com to defendant. The domain name is currently pending transfer.

Plaintiffs' amended complaint asserts one claim for reverse domain name hijacking under 15 U.S.C. § 1114(2)(D)(v) (doc. 61). Defendant asserts counterclaims for (1) trademark infringement and (2) cybersquatting in violation of the Anticybersquatting Consumer Protection Act ("ACPA") (doc. 67). Plaintiffs and defendant cross-move for summary judgment on all claims.

**III**

Defendant moves to seal excerpts of Lurie's deposition, arguing that plaintiffs designated portions of the documents as confidential. A party seeking to seal a judicial record must show "compelling reasons supported by specific factual findings" that outweigh the presumption of public access to court documents. Kamakana v. City & Cnty. of Honolulu, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (citation omitted). This "strong presumption" of public access "applies fully to. . . motions for summary judgment and related

- 4 -

attachments." Id. at 1179.  Defendant makes no showing to support its argument to seal the deposition excerpts.  Moreover, plaintiffs oppose sealing Lurie's testimony.  Defendant's motion to seal is denied.

Defendant also argues that plaintiffs did not timely file their response to its MSJ. Under Rule 6(d), Fed. R. Civ. P., three days are added to the filing deadline.  And when a deadline falls on a Saturday or Sunday, the time period expires on the following work day. Fed. R. Civ. P. 6(a)(1)(C).  Plaintiffs' response to defendant's MSJ was due June 4, 2012, and was filed on May 31, 2012.  Plaintiffs' response was timely.

In its reply in support of its MSJ, defendant raised new arguments regarding prior litigation involving SkyVenture.  We do not consider arguments raised for the first time in a reply.  See Graves v. Arpaio, 623 F.3d 1043, 1048 (9th Cir. 2010) ("arguments raised for the first time in a reply brief are waived").

**IV**

To prevail on its ACPA cybersquatting counterclaim, defendant "must show (1) registration of a domain name, (2) that was identical or confusingly similar to a mark that was distinctive <u>at the time of registration</u>, and (3) bad faith intent at the time of registration." GoPets Ltd. v. Hise, 657 F.3d 1024, 1030 (9th Cir. 2011) (citing 15 U.S.C. § 1125(d)(1)) (internal quotation marks omitted) (emphasis in original).[3]

The Ninth Circuit addressed the meaning of "registration" in GoPets.  The domain name gopets.com was first registered by defendant Edward Hise in March 1999.  Id. at 1026. GoPets Ltd. first used the GoPets mark in August 2004.  Id. at 1027.  In December 2006, Hise transferred the registration of the gopets.com domain name to co-defendant Digital Overture, a corporation he co-owned.  Id. at 1028.

GoPets Ltd. asserted a cybersquatting claim under the ACPA.  It conceded that

---

[3] Earlier Ninth Circuit opinions have noted that bad faith intent can arise after the domain name is registered.  See DSPT Int'l, Inc. v. Nahum, 624 F.3d 1213, 1220 (9th Cir. 2010).

- 5 -

gopets.com was not identical to a protected mark when Hise first registered the domain name in 1999, but argued that the transfer of the domain name to Digital Overture in 2006 was a "registration" under the meaning of the ACPA. Id. at 1030. The court disagreed, holding that Digital Overture's 2006 re-registration of gopets.com was not a registration under § 1125(d)(1). Id. at 1032. The court noted that it was "undisputed that [] Hise could have retained all of his rights to gopets.com indefinitely if he had maintained the registration of the domain name in his own name." Id. at 1031. It found that there was "no basis in ACPA to conclude that a right that belongs to an initial registrant of a currently registered domain name is lost when that name is transferred to another owner." Id. Doing so would effectively make rights to many domain names inalienable, whether "by gift, inheritance, sale, or other form of transfer," in contrast to the general rule that "a property owner may sell all of the rights he holds in property." Id. at 1031-32. Accordingly, GoPets concluded that "[b]ecause [] Hise registered gopets.com in 1999, long before GoPets Ltd. registered its service mark, Digital Overture's re-registration and continued ownership of gopets.com does not violate § 1125(d)(1)." Id. at 1032.

Defendant argues that GoPets is distinguishable, because in GoPets Hise transferred the domain name to an entity he co-owned, and here Lurie purchased airfx.com from an unrelated third party. According to defendant, the purpose of the ACPA will be undermined if a cybersquatter who purchases a domain name in bad faith is immune from liability simply because the domain name he purchased existed before a mark was distinctive. Nothing in the language of GoPets indicates that it should be read as narrowly as defendant suggests. GoPets did not distinguish between transfers of a domain name to related parties and other kinds of domain name transfers. To the contrary, GoPets broadly reasoned that if an original owner's rights associated with a domain name were lost upon transfer to "another owner," the rights to many domain names would become "effectively inalienable," a result the intention of which was not reflected in either the structure or the text of the ACPA. Id. at 1031-32.

We find GoPets squarely on point. It is undisputed that airfx.com was initially

- 6 -

1  registered on March 21, 2003 by Bestinfo.  It is also undisputed that ASE's first use in
2  commerce of the AirFX mark was June 2005 and that Elliot purchased airfx.com on February
3  2, 2007.  Under these facts, airfx.com was registered more than two years before the AirFX
4  mark existed.  Thus, under GoPets, plaintiffs' re-registration of airfx.com in February 2007
5  "was not a registration within the meaning of § 1125(d)(1)."  Id. at 1032.  Rather, because
6  Bestinfo registered airfx.com "long before [defendant] registered its service mark," plaintiffs'
7  registration and ownership of airfx.com "does not violate § 1125(d)(1)."  Id.  Plaintiffs are
8  therefore entitled to summary judgment on defendant's cybersquatting counterclaim.

**V**

Under the Lanham Act, a party who "use[s] in commerce any reproduction. . . of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive" is liable for trademark infringement.  15 U.S.C. § 1114(1)(a).  The parties focus significant attention on whether a likelihood of confusion exists.  However, because of the fact-intensive nature of assessing likelihood of confusion, summary judgment on these grounds is "generally disfavored."  Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, __ (9th Cir. 2012).  Accordingly, we begin our analysis elsewhere.

Trademark infringement law prohibits "only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers."  Bosley Med. Inst., Inc. v. Kremer, 403 F.3d 672, 676 (9th Cir. 2005). If a person's use of a mark is noncommercial, it does not violate the Lanham Act.  See id. at 677 ("The question before us, then, boils down to whether [defendant's] use of Bosley Medical as his domain name was in connection with a sale of goods or services.  If it was not, then [defendant's] use was noncommercial and did not violate the Lanham Act.") (internal quotation marks omitted).

With respect to plaintiffs' use of the AirFX mark, defendant's sole argument is that

- 7 -

"Lurie's own allegations and admissions establish that he has used the AirFX mark in commerce in connection with the advertising and offer for sale of his wind tunnels," citing paragraphs in plaintiffs' complaint that refer to plaintiffs' efforts in developing a brand name and seeking potential purchasers and investors for AIRFX wind tunnels. Def.'s MSJ at 17. At the same time, defendant asserts (and plaintiffs concede) that plaintiffs have never sold an AirFX product, DSOF2 ¶ 4, have no advertising or marketing activities, DSOF2 ¶ 5, and have no manufacturing activities. DSOF2 ¶ 6. Moreover, it is undisputed that plaintiffs have never developed a website for airfx.com. DSOF2 ¶ 36.

The act of registering a domain name, without more, does not constitute commercial use. Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1052 (9th Cir. 1999). Use can be commercial, however, if a person uses a domain name to sell a product or service, or if the domain name contains paid advertisements. See Bosley, 403 F.3d at 678. Plaintiffs have never sold any AirFX products or services. It is also undisputed that the airfx.com domain name is currently "parked" at a splash page provided by the registrar, GoDaddy. As discussed above, although plaintiffs present evidence to support their assertion that Lurie does not derive any income from the advertisements on the splash page, defendant did not offer any controverting evidence. There is thus no genuine issue of fact as to whether plaintiffs derive income from airfx.com.

Defendant has not argued that plaintiffs engaged in pre-sales efforts sufficient to constitute commercial use. It does, however, present evidence suggesting that Lurie spoke with one potential customer in 2010. DSOF2 ¶ 7. Plaintiffs also indicate that they have conducted preliminary research into wind tunnel designs. PSOF1 ¶ 15. Even after viewing these facts in the light most favorable to defendant, this limited activity, standing alone, is insufficient to constitute commercial use of a mark. See Brookfield, 174 F.3d at 1052 ("Although widespread publicity of a company's mark. . . may be sufficient to create an association among the public between the mark and [defendant], mere use in limited e-mail correspondence with lawyers and a few customers is not.").

Although plaintiffs have developed a brand name, registered a domain name, started researching the design of their wind tunnels and approached potential investors and customers, plaintiffs have not sold, manufactured, advertised, or marketed any product bearing the AirFX mark. Defendant points to no other facts to establish plaintiffs' commercial use of the AirFX mark. Accordingly, defendant has not raised a genuine issue of material fact as to whether plaintiffs' use of the mark was commercial. Without commercial use, there is no trademark infringement. See Bosley, 403 F.3d at 677. Plaintiffs are entitled to summary judgment on defendant's trademark infringement counterclaim.

## VI

Finally, we turn to plaintiffs' claim for reverse domain name hijacking. To prevail, plaintiffs must show (1) registration of a domain name; (2) that has been "suspended, disabled, or transferred under a policy implemented by a registrar as described in 15 U.S.C. § 1114(2)(D)(ii)(II);" (3) "that the owner of the mark that prompted the domain name to be suspended, disabled, or transferred has notice of the action;" and (4) "that [their] registration or use of the domain name is not unlawful." Ricks v. BMEzine.com, LLC, 727 F. Supp. 2d 936, 959 (D. Nev. 2010) (citing Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona, 330 F.3d 617, 625 & n.1 (4th Cir. 2003)); see also 15 U.S.C. § 1114(2)(D)(v).

The parties only disagree as to whether plaintiffs' registration or use of airfx.com is unlawful. Because we have concluded that plaintiffs cannot be liable under the ACPA for cybersquatting as a matter of law, and because plaintiffs are entitled to summary judgment on the trademark infringement claim, we conclude that there is no genuine issue of fact as to whether plaintiffs' use of the domain name is lawful.

Defendant argues that plaintiffs' cybersquatting and their conduct throughout this litigation has precluded their ability to seek equitable relief. As discussed above, the timing of airfx.com's registration precludes a finding of liability for cybersquatting. And defendant does not present any facts to support its argument that plaintiffs "conducted the litigation in unprecedented, and unprofessional ways." Def.'s MSJ at 18.

- 9 -

Under 15 U.S.C. § 1114(2)(D)(v), "[t]he court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant."  Accordingly, we will order that airfx.com remain registered with plaintiffs.

**VII**

Both parties argue that this case is "exceptional" under the Lanham Act, warranting an award of attorneys' fees.  We will address a motion for attorneys' fees if and when one is before us.

**VIII**

**IT IS ORDERED DENYING** defendant's motion to seal (doc. 93).  Pursuant to LRCiv 5.6(e), the lodged deposition excerpts will not be filed.  Defendant shall resubmit the document for filing within five (5) days of the entry of this order.  See LRCiv 5.6(e).

**IT IS ORDERED DENYING**  defendant's motion for summary judgment (doc. 92).

**IT IS ORDERED GRANTING** plaintiffs' motion for summary judgment (doc. 87).

The Clerk shall enter final judgment in favor of plaintiffs/counterdefendants and against defendant/counterclaimant on (1) plaintiffs' claim for reverse domain name hijacking; (2) defendant's counterclaim for trademark infringement; and (3) defendant's counterclaim for cybersquatting in violation of the ACPA.

**IT IS FURTHER ORDERED** that the domain name www.airfx.com not be transferred to defendant, but instead, must remain registered with plaintiffs.

DATED this 23rd day of August, 2012.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge

- 10 -